REAL PROPERTIES, INC., et
al., Respondents,

v.

MISSION INSURANCE COMPANY, et
al., Defendants,

George B. Holman & Co., Inc.,
Petitioner, Appellant,

Barrett Moving & Storage, Respondent.

No. C2-87-1061.

Court of Appeals of Minnesota.

Nov. 24, 1987.
Review Granted Jan. 20, 1988.

Teresa B. Bonner, Lindquist & Vennum, Minneapolis, for respondent Real Properties, Inc., et al.

Roger L. Rowlette, Johnson & Lindberg, P.A., Minneapolis, for defendants Mission Ins. Co., et al.

John P. Lommen and Kay Nord Hunt, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for petitioner-appellant George B. Holman & Co., Inc.

Tony R. Krall, Hanson, Noel & Lulic, Minneapolis, for respondent Barrett Moving & Storage.

Heard, considered, and decided by CRIPPEN, P.J., and FOLEY and LANSING, JJ.

## OPINION

LANSING, Judge.

George B. Holman & Co., Inc., a New Jersey corporation, appeals from an order denying its motion for dismissal of the complaint against it for lack of personal jurisdiction and granting Real Properties, Inc., and Fourscore, Inc., partial summary judgment on that issue. We affirm.

## FACTS

In 1981 respondent Real Properties, Inc., retained respondent Fourscore, Inc., to liquidate certain Chinese art objects which were stored in a warehouse in Carlstad, New Jersey. Real Properties invited various New Jersey firms, including appellant George B. Holman & Co., Inc., to submit bids for the transportation of the goods to Minnesota. Although Holman submitted a bid, Real Properties and Fourscore hired respondent Barrett Moving & Storage Co. to package and ship the goods. Barrett then contracted with Holman to package and crate the goods for shipment. According to Holman's treasurer, Holman agreed to do the packaging "simply in an effort to assist another United Van Lines agent."

The art objects were ultimately packaged by Holman in New Jersey and shipped on Barrett trucks to Minnesota. Upon arrival in Minnesota, it was discovered that they had been damaged in transit. Real Properties and Fourscore allege that Holman negligently packaged the art objects and that Barrett is liable as Holman's principal in the transaction.

Barrett is a Minnesota corporation, and Holman is a New Jersey corporation with its principal place of business in Hackensack, New Jersey. Holman's business involves the warehousing, transportation and shipping of goods, and Holman has ICC authority to ship in 28 states, but not Minnesota. Holman is not licensed to conduct business in Minnesota and maintains no offices or bank accounts here. Holman does not own any Minnesota property or have a local telephone number, and its only advertising was a listing in the Bergen County, New Jersey, yellow pages.

However, both Holman and Barrett are agents for United Van Lines, a Missouri corporation with ICC authority to ship in 48 states. United consists of 500–600 agents across the country, who provide a nationwide shipping network. United agents lease their equipment to United to ship to areas in which an agent has no ICC authority. United also provides a means by which United agents direct business to each other, either directly or through United. Finally, United publishes a roster listing all United agents throughout the country. Agents refer to this roster when an agent is needed for a job in a distant city. Both Barrett and Holman are listed in this directory.

As a United agent, Holman had previously participated in a number of shipments to and from Minnesota, acting as hauler, booking agent, or general agent. In addition, Barrett had previously used Holman for packing and destination services in New Jersey. Its previous bid and the shipping documents indicate that Holman was,

or could have been, aware that the goods were destined for Minnesota.

The trial court based its assertion of jurisdiction over Holman on Holman's previous participation in the shipment of goods to Minnesota and its knowledge that the contract at issue was with a Minnesota client. On appeal, Holman argues that these contacts are insufficient to satisfy due process requirements for the assertion of personal jurisdiction.

## ISSUE

Is the exercise of personal jurisdiction over Holman consistent with due process?

## ANALYSIS

Real Properties and Fourscore base their claim of personal jurisdiction on Minn.Stat. § 543.19, subd. 1(b) and (d) (1987), which provide, respectively, for jurisdiction over foreign corporations who transact any business in Minnesota or commit any acts outside Minnesota which cause injury or property damage in Minnesota. That statute has been construed as authorizing personal jurisdiction over nonresident defendants to the maximum extent allowed by the due process clause of the United States Constitution. *Vikse v. Flaby,* 316 N.W.2d 276, 281 (Minn.1982).

Beginning with *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the United States Supreme Court has ruled that due process requires that a nonresident defendant not be subject to the personal jurisdiction of a forum state unless the defendant has established certain minimum contacts with that state. Most recently, the Court has stated that a defendant may not be haled into court unless there is some act by which the defendant has purposely availed himself of the privilege of conducting business in that state, thus invoking its benefits and protections. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985).

In deciding this constitutional question, Minnesota courts have adopted the five-part analysis set forth in *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir.1965). The *Aftanase* test requires consideration of (1) the quantity of contacts with the forum state; (2) the nature and quality of those contacts; (3) the source and connection of those contacts to the cause of action; (4) the interest of the forum state; and (5) the convenience of the parties. *Dent–Air, Inc. v. Beech Mountain Air Service, Inc.,* 332 N.W.2d 904, 907 (Minn.1983). The first three factors are primary, with the last two deserving less consideration. *Id.*

### 1. Quantity of Contacts

Holman does not exhibit any of the classic indicia of doing business in Minnesota. It is not authorized to ship here, maintains no local office, phone, agent or bank account, and owns no property here. However, the fact that Holman did not directly conduct business here is not decisive. *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717, 720 (Minn.1985), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Holman did enter into the contract with Barrett, a Minnesota corporation, and had in the past performed services in connection with shipments to and from Minnesota, some of which also involved Barrett. Although the precise number of these prior contacts is not clear, they appear to have been numerous.

### 2. Quality of Contacts

This factor goes to the issue of "purposeful availment," since even a substantial number of contacts will not confer personal jurisdiction unless the defendant's conduct is such that he should reasonably anticipate being haled into court in the forum state. *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183. Under *Burger King,* Holman's contract with Barrett to package the goods would not alone establish the constitutionally necessary minimum contacts. Prior negotiations, contemplated future consequences, the terms of the contract and the parties' course of dealing must be considered in determining whether Holman has purposefully established minimum contacts in Minnesota. *Id.* at 479, 105 S.Ct. at 2185. If Holman "purposefully directed" its commercial efforts

toward Minnesota residents, its contacts are sufficient for jurisdictional purposes. *Id.* at 476, 105 S.Ct. at 2184.

Aside from the contract at issue, Holman has acted as agent in connection with a number of shipments involving Minnesota, although it apparently always acted under United's authority in those instances. Holman argues that because it acted as agent for a disclosed principal in those shipments, only United could be bound to jurisdiction on the basis of those contacts. *First National Bank of Minneapolis v. White,* 420 F.Supp. 1331, 1336 (D.Minn.1976). The record is insufficient to establish whether Holman was United's "agent" in a legal sense. Additionally, the fact that those contacts are not sufficient to support jurisdiction on their own does not make them irrelevant to the question of jurisdiction.

Even if Holman did not actively attempt to create a specific Minnesota clientele for its shipping business, Holman's participation in the United network constituted a purposeful direction of its commercial activities toward residents of states other than those in which it had shipping authority. In contrast to the defendants in *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), Holman conducted its business activity on a nationwide scale. But for its status as a United agent, Holman would neither have been asked to do the packaging nor accepted the job. In these circumstances, the contract was not a single, isolated incident, but rather a part of an ongoing relationship among United agents across the country.

Holman relies on United States Supreme Court cases ruling that "unilateral" activity on the part of a party does not suffice to establish personal jurisdiction over a defendant. *See World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567 (driving a car to a distant state); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416–17, 104 S.Ct. 1868, 1873–74, 80 L.Ed.2d 404 (1984) (drawing a check payable to the defendant on a state bank); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958),

*reh'g denied,* 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958) (exercising a power of appointment in a state other than that in which a trust was created and administered).

In those cases the activity was unilateral in the sense that the defendant against whom jurisdiction was asserted by reason of the activity had nothing to do with its initiation or performance. A contract cannot be considered "unilateral" in the same sense: by definition a contract is a bilateral, mutual agreement. While Barrett may have initiated the conversation that resulted in the contract, the contract itself was not "unilateral," and Holman did agree to its terms and perform it, knowing that the goods were destined for Minnesota. In view of the ongoing relationship between Barrett and Holman as United agents, the quality of the contacts in this case are sufficient to support jurisdiction over Holman.

### 3. Relationship between contacts and cause of action.

The Supreme Court has distinguished between assertions of "general" jurisdiction, in cases where the cause of action is unrelated to the contacts, and "specific" jurisdiction, in which the contacts and the cause of action are related. *See Helicopteros,* 466 U.S. at 414 n. 8, 9, 104 S.Ct. at 1872 n. 8, 9. Where the claims against a party do not arise out of or relate to its contacts with the forum, the defendant must have carried on a continuous and systematic part of its business in the forum state for jurisdiction to be allowed. *Id.* at 415, 104 S.Ct. at 1872 (citing *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)).

In this case the cause of action did arise out of Holman's contacts with Minnesota, including the prior business relationship and the contract itself. While that fact is true of all contract claims and is not itself sufficient to support the exercise of jurisdiction over Holman, *Maiers Lumber & Supply, Inc. v. Chancey Trailers,* 354 N.W.2d 585, 587 (Minn.Ct.App.1984), it nonetheless weighs in favor of exercising jurisdiction.

#### 4. Interest of the Forum State.

Minnesota clearly has an interest in providing a forum for residents injured by the actions of out-of-state parties, and that interest is reflected in the policy of asserting jurisdiction under the long-arm statutes to the extent permitted by due process. *See Hardrives, Inc. v. City of LaCrosse, Wisconsin,* 307 Minn. 290, 296, 240 N.W.2d 814, 818 (1976).

#### 5. Convenience of the Parties.

Lack of inconvenience to the defendant will not result in the extension of otherwise impermissible jurisdiction, *World–Wide Volkswagen,* 444 U.S. at 294, 100 S.Ct. at 565, although convenience and the efficient resolution of controversies "sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184.

In this case the goods were transported to Minnesota and have been stored here, and witnesses to the damage reside here. All of the parties reside here except Holman and the insurer. The convenience of the parties weighs in favor of the exercise of jurisdiction.

In Minnesota, doubtful cases should be resolved in favor of a retention of jurisdiction. *Hardrives,* 307 Minn. at 296, 240 N.W.2d at 818. We conclude that Holman's participation in a nationwide shipping network, which led to the formation of a contract with a Minnesota resident with whom it had done business in the past, suffices to support the exercise of personal jurisdiction over it.

#### DECISION

The trial court's exercise of personal jurisdiction over Holman is not inconsistent with due process.

Affirmed.