Dean A. and Barbara J.
ROSTAD, Respondents,

v.

ON–DECK, INC., petitioner, Appellant,

Gary Guy Willey, Respondent,

Sportcraft Company, Respondent.

No. C2–84–235.

Supreme Court of Minnesota.

Aug. 16, 1985.

718

Jardine, Logan & O'Brien, Graham Heikes, Brian N. Johnson, St. Paul, for appellant.

Robbins, Zelle, Larson & Kaplan, Leo F. Feeny, Susan R. Nelson, St. Paul, for Rostad.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Kenneth W. Dodge, Minneapolis, for Willey.

Lasley, Gaughan, Stick & Angell, P.A., Steven J. Muth, Minneapolis, for Sport-craft.

YETKA, Justice.

While umpiring a softball game in the Twin Cities, Dean Rostad was hit in the head by a metal ring used as a bat weight that flew from the end of the bat of the batter who was warming up on deck. Rostad sued the manufacturer of the bat weight, On-Deck, Inc., in Hennepin County District Court. On-Deck moved that the case be dismissed for lack of personal jurisdiction. The trial court granted the motion and ordered entry of the judgment in On-Deck's favor. The judgment was entered on January 9, 1984. Rostad appealed to the Minnesota Court of Appeals on February 6, 1984. The court of appeals, 354 N.W.2d 95, reversed the trial court. On-Deck petitioned this court for further review; the petition was granted. We affirm the court of appeals.

On-Deck, Inc., is a New Jersey corporation formed to manufacture a solid metal, vinyl covered weight. It is shaped like a donut so that it slips over the handle of a baseball bat, slides down and, ideally, lodges itself on the bat's barrel. A batter warming up will slip the weight on and swing the bat as hard as possible. If the bat's barrel is small enough, however, the weight can slip off the end and fly through the air. Just such an event happened in this case. A bat weight slipped off the end of a batter's bat and hit Dean Rostad, who was umpiring, in the head. The blow severely injured Rostad, who, after extensive hospitalization, still suffers mental, motor, and verbal difficulties.

Although having no offices in Minnesota, owning no property in Minnesota, having no agent appointed in Minnesota, and not being licensed to do business in Minnesota, On-Deck has sold a great number of its bat weights here through distributors. From 1968, when the weight first went on the market, until 1973, On-Deck contracted

with General Sportcraft to be the bat weight's exclusive distributor for the "continent of North America, the state of Hawaii, and all islands in the Caribbean Sea and the Gulf of Mexico." After 1973, On-Deck sold weights directly to national distributors such as Sears, K-Mart, and Hillerich & Bradsby Co.

On-Deck retained the right to sell and market to major league baseball teams. It required that its "On-Deck" trademark be prominently displayed on all packages of the bat weight. A picture of Elston Howard, former Yankee great and president of On-Deck, Inc., was prominently displayed on each package. Elston Howard and Frank Hamilton, the weight's inventor and owner of On-Deck, Inc., traveled the country extensively marketing the weight. Professional baseball teams were specifically targeted for marketing, presumably for the national exposure and stature that their use of the weight would provide.

The plaintiffs presented a number of sales receipts for purchases of bat weights from Minnesota sporting goods shops and departments. Affidavits from owners of sporting goods stores documented that the weights have been a popular product in Minnesota for a number of years. The Minnesota Twins have been buying the weights for at least 10 years. Nonetheless, Frank Hamilton has stated he never knew his bat weight was ever sold in Minnesota.

The bat weight that struck Rostad was found by Gary Willey at a ballfield in St. Louis Park where he worked as a groundskeeper. Willey brought the bat weight to softball games, including the game where Rostad was injured. There is no evidence as to how this particular bat weight found its way to Minnesota. For the purposes of this appeal only, On-Deck assumes that it manufactured the weight.

The issue in this case is whether Minnesota can exercise jurisdiction over a foreign corporation which sells products in Minnesota through distributors under a "stream of commerce" theory and when

the plaintiffs cannot show how the particular product arrived in the state.

■ The plaintiffs seek personal jurisdiction over On-Deck, Inc., a New Jersey corporation, by Minnesota's long-arm statute. It allows jurisdiction over a defendant if that defendant "[c]ommits any act outside Minnesota causing injury or property damage in Minnesota." Minn.Stat. § 543.-19, subd. 1(d) (1984). Since we have determined that the legislature intended the statute to have the maximum extraterritorial effect allowed under the due process clause of the federal constitution, the permissibility of an attempted exercise of jurisdiction may be tested by analyzing whether it meets constitutional muster. *Vikse v. Flaby*, 316 N.W.2d 276, 281 (Minn.1980); Note, *Due Process and Long-Arm Jurisdiction in Minnesota*, 5 Wm. Mitchell L.Rev. 287, 314–16 (1979).

■ Due process requires that a defendant have minimum contacts with a jurisdiction before being required to defend against a lawsuit in that jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Requiring minimum contacts both protects a defendant from burdensome litigation in a far-flung jurisdiction and vindicates the status of states as co-equal sovereigns within the federal system. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980). To have minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities within the jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). In Minnesota, a five-factor test first enunciated in the Eighth Circuit case of *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965), is used to determine if minimum contacts exist. It requires the court to evaluate:

(1) The quantity of contacts with the forum state,

(2) The nature and quality of contacts,

(3) The source and connection of the cause of action with these contacts,

(4) The interest of the state providing a forum,

(5) The convenience of the parties.

*Vikse v. Flaby,* 316 N.W.2d at 282. The first three factors are the most important, the last two of lesser importance. *Dent-Air, Inc. v. Beech Mountain Air Service, Inc.,* 332 N.W.2d 904, 907 (Minn.1983).

### 1. *The Quantity of the Contacts*

Despite having sold thousands of its bat weights here, On-Deck claims it has no contacts with Minnesota. On-Deck points out that it has never had an office, sales outlet, place of business, or agent for service of process here. It claims it has never had a direct contact with Minnesota. This may be true, but it fails to account for On-Deck's numerous indirect contacts with Minnesota.

On-Deck ignores its indirect contacts with Minnesota because it believes that, after the United States Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), "purposeful contacts" must be direct contacts. Placing a product in the stream of commerce that leads to a state does not subject a manufacturer to jurisdiction, according to On-Deck, because such contacts are indirect rather than direct. On-Deck's frontal assault on the stream-of-commerce theory of jurisdiction misconstrues *World-Wide Volkswagen,* ignores the Supreme Court's express recognition of the theory, forgets scholarly comment on the subject, and fails to account for the plethora of cases upholding jurisdiction under a stream-of-commerce theory.

The *World-Wide Volkswagen* case dealt with a regional distributor and a retail dealer of cars at the end of the distribution chain who were being hailed into court in a jurisdiction far from their areas of distribution simply because the plaintiff had driven the car to that jurisdiction. *Id.* at 289, 100 S.Ct. at 563. Jurisdiction over the automobile's manufacturer and importer was assumed, though not at issue. *Id.* at 317–18, 100 S.Ct. at 570–71 (Blackmun, J., dissenting). Regional distributors and retail dealers cannot, according to the Supreme Court, be forced to defend lawsuits in jurisdictions far from their area of business just because a plaintiff brought the product to the jurisdiction. *Id.* at 298, 100 S.Ct. at 567.

Far different, however, is the situation of a manufacturer or a primary distributor:

Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve *directly or indirectly,* the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum *State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.*

*Id.* at 297–98, 100 S.Ct. at 567. (emphasis added). To hold otherwise would be to "doom all products liability cases to dismissal from forums other than the place of manufacture or initial sale." Jay, *"Minimum Contacts" as a Unified Theory of Personal Jurisdiction: A Reappraisal,* 59 N.C.L.Rev. 429, 442–43 (1981); *see also* Comment, *Federalism, Due Process, and Minimum Contacts: World-Wide Volkswagen Corp. v. Woodson,* 80 Colum.L.Rev. 1341, 1360–61 n. 146 (1980).

Courts have uniformly followed the United States Supreme Court's admonition in *World-Wide Volkswagen* and held manufacturers subject to personal jurisdiction under the stream-of-commerce theory. *E.g., Nelson v. Park Industries, Inc.,* 717 F.2d 1120 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1277–78, 79 L.Ed.2d 682 (1984); *Ford Motor Co. v. Atwood Vacuum Machine Co.,* 392 So.2d 1305 (Fla. 1981); *Svendsen v. Questor Corp.,* 304 N.W.2d 428 (Iowa 1981). As the Iowa Supreme Court wrote, even though the actual

marketing of the product is done by intermediaries:

> [T]hrough their actions in marketing their product, [the defendants] sought to serve the Iowa market, and therefore should be amenable to the jurisdiction of the Iowa courts. * * * it is reasonable to infer that their commercial transactions resulted in more than insubstantial use and consumption in this state. *See Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 441–42, 176 N.E.2d 761, 766 (1961). This affords a sufficient basis for the conclusion that *the [defendants] through the Omaha distributor, indirectly sought to serve the Iowa market, and consequently are subject to suit within this state.*

*Id.* at 431 (emphasis added). According to the Seventh Circuit, even though the defendants "did not originate the distribution system and do not control it, they did place the flannel shirts in and move them along a stream of commerce destined for retail sale throughout the United States." *Nelson v. Park Industries, Inc.*, 717 F.2d at 1126; *see Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081, 1085 (5th Cir.1984).

■ In essence, the "fairness requirement of due process does not extend so far as to permit a manufacturer to insulate itself from the reach of the forum state's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of its products." *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 285 (3rd Cir.1981), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981); *accord Hedrick v. Daiko Shoji Co.*, 715 F.2d 1355 (9th Cir.1983); *Noel v. S.S. Kresge Co.*, 669 F.2d 1150 (6th Cir.1982); *Shanks v. Westland Equip. and Parts Co.*, 668 F.2d 1165 (10th Cir.1982). A manufacturer who places its product in the stream of commerce in an effort to serve, directly or indirectly, markets in a jurisdiction is subject to suit in that jurisdiction under *World-Wide Volkswagen.*

■ Although On-Deck does not have any direct contacts with Minnesota that can be proven in this case, it has a plethora of indirect contacts. It entered into contracts with others to distribute its products throughout North America, Hawaii and the Carribean, a market which specifically includes Minnesota. The On-Deck trademark and Elston Howard's picture are on the packaging of every weight. Both Frank Hamilton, the owner of On-Deck, and Elston Howard, the president of On-Deck, have traveled the United States extensively marketing their product. On-Deck's distributors have, in fact, attempted to and been quite successful at marketing the product in Minnesota, and On-Deck has profited as a result. Frank Hamilton's claim that he never knew his products were marketed in Minnesota, aside from its incredulity, is irrelevant. On-Deck's distribution contracts and marketing efforts were calculated attempts to create a national market for his product, a market which specifically includes Minnesota. The bat weights arrived here not by some fortuitous happenstance of a plaintiff bringing the product to the jurisdiction as in *World-Wide Volkswagen*, but by the purposeful marketing efforts of On-Deck and On-Deck's distributors. On-Deck, having attempted and succeeded in penetrating the market in Minnesota for bat weights, albeit through distributors, has had numerous contacts with Minnesota.

### 2. *The Nature and Quality of the Contacts*

The appellant argues that because this bat weight was found on a field and there is no way of discovering how the weight came to this state, On-Deck's contacts with Minnesota are not of a quality sufficient to support jurisdiction. This argument ignores the fact that often there is no way that a plaintiff can know how a defective product actually weaved its way through commerce's labyrinth. The fact that the manufacturer's goods came to the jurisdiction by an unknown and thereby a possibly circuitous route does not change the fact that the product injured someone in a juris-

diction where the manufacturer can expect to be sued.

In *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), the Illinois Supreme Court not only did not know how the particular offending product got to the state, it had no idea if any of the manufacturer's other products had ever been in the state. *Id.* at 442, 176 N.E.2d at 766. Rather, the Illinois court inferred sufficient number and quality of contacts as a reasonable assumption from the character of the business. *Id.* The United States Supreme Court found no difficulties with the Illinois court's analysis. *World-Wide Volkswagen*, 444 U.S. at 298, 100 S.Ct. at 567. Thus, the plaintiffs' inability to trace the bat weight's route to Minnesota in no way deprives Minnesota of jurisdiction.

The nature of On-Deck's contacts have been, for the most part, sales. It has profited by sale of thousands of its bat weights in Minnesota. In a commercial operation, sales are the most tangible contact with a jurisdiction. Although through intermediaries, these sales were accomplished under the marketing contracts for the benefit of On-Deck. Additionally, there was marketing on On-Deck's part. It specifically required that its trademark be placed prominently on the packages of its product. Elston Howard, the president of the company, was pictured on every package. It can be assumed that its distributors also marketed the product in this state. On-Deck thrust its corporate image into the jurisdiction, both by its own packaging requirements and the actions of its distributors, and profited by it. The nature and quality of On-Deck's contacts weigh in favor of jurisdiction.

### 3. The Source of the Contacts

The source of the contacts is, in the first instance, from On-Deck itself. It wanted a national market, a market including Minnesota, so it contracted with others to achieve its distribution goals. Through savvy marketing, the bat weight became a desirable item, desirable enough that somebody purchased this bat weight and desirable enough that, when found, it was put to use at its intended purpose. On-Deck will not now be allowed to hide behind the structuring of its distribution system when On-Deck's intent was to enter the market here and profit thereby. Thus, the source and connection of the contacts with the cause of action weigh in favor of jurisdiction.

### 4. Minnesota's Interest in the Litigation

Minnesota's interest in the litigation is obvious. Minnesota was the site of this accident and a Minnesotan has been severely injured. This factor, albeit of minor consideration, weighs in favor of jurisdiction.

### 5. The Convenience of the Parties

Finally, all the witnesses of the accident and plaintiffs reside here in Minnesota. Only the defendant resides elsewhere. Minnesota is the convenient and logical forum for this litigation. Again, though of minor interest in comparison to the first three factors, convenience seems to weigh in favor of jurisdiction in Minnesota.

In short, On-Deck sold thousands of its bat weights in Minnesota. The reason the weights were sold here is that On-Deck contracted with General Sportcraft and other national retailers to serve the national market and, specifically, the Minnesota market. It profited thereby. This is purposeful availment by On-Deck of the benefits and corresponding responsibilities of doing business in Minnesota. Traditional notions of fair play and substantial justice dictate that On-Deck should defend this lawsuit in Minnesota; they would be offended if these plaintiffs were limited to suit in New Jersey.

The court of appeals is affirmed.

COYNE, J., took no part in the consideration or decision of this case.