REAL PROPERTIES, INC., et al., Respondent,

v.

MISSION INSURANCE COMPANY, et al., Defendants,

George B. Holman & Co., Inc., petitioner, Appellant,

Barrett Moving & Storage, Respondent.

No. C2–87–1061.

Supreme Court of Minnesota.

Aug. 12, 1988.

Kay Nord Hunt, Minneapolis, for appellant.

Tony R. Krall, Minneapolis, for Barrett Moving & Storage.

Teresa B. Bonner, Charles J. Lloyd, Minneapolis, for Real Properties.

Roger L. Rowlette, Minneapolis, for Mission Ins. Co.

SIMONETT, Justice.

This case involves once again the limits of personal jurisdiction over a foreign defendant. We find that the defendant's contacts with this state are insufficient to confer jurisdiction and we reverse.

Plaintiff-respondent Real Properties, Inc., owned a large quantity of Chinese art pieces stored in New Jersey. In July 1981, plaintiff contracted with a Minnesota firm, Barrett Moving & Storage, to package and move the art objects to Minneapolis, Minnesota. Barrett, in turn, contracted with a New Jersey corporation, George B. Holman & Co., Inc., to package the artifacts for shipment. Barrett's drivers then loaded the crates on Barrett trucks, and, operating under its own I.C.C. authority, Barrett hauled the goods to Minnesota. When the more than 30 trucks arrived in Minneapolis, the owner discovered that many of the art objects were broken, with a loss, allegedly, of over $290,000.

Initially, plaintiff Real Properties sued its own insurance company, Mission Insurance Company, with which it had all-risk coverage, for its loss. Mission, however, is apparently insolvent. Plaintiff then amended its complaint to include as additional party defendants, Barrett, Holman, and United Van Lines. Sometime thereafter plaintiff dismissed its suit against United Van Lines. Holman, the New Jersey company, asserted the defense of lack of personal jurisdiction and moved to dismiss the case against it; plaintiff countered with a motion for partial summary judgment. The trial court granted plaintiff partial summary judgment, finding personal jurisdiction over Holman. The court of appeals affirmed. *Real Properties, Inc. v. Mission Ins. Co.,* 415 N.W.2d 379 (Minn. App.1987). We granted Holman's petition for further review.

Plaintiff's complaint alleges that Holman's negligent packing caused the breakage damage to the shipped goods. This suffices, as the trial court found and Holman does not dispute, to meet the requirements of our long arm statute, Minn.Stat.

§ 543.19, subd. 1(d) (1986) (act outside Minnesota causing property damage in Minnesota). Holman strenuously argues, however, that its contacts with Minnesota were so minimal that to be haled into our state court would be a denial of federal due process.

Holman is in the transportation business in Hackensack, New Jersey. It is licensed by the Interstate Commerce Commission to transport goods in 28 states, but not in Minnesota. It has no offices or bank accounts in this state, no local telephone, and has never advertised in Minnesota.

Holman is a member, however, as is Barrett, of United Van Lines, a Missouri corporation with I.C.C. authority to ship in all 48 contiguous states. United Van Lines has approximately 500 to 600 member-agents located nationwide, and it publishes a member-agency roster which is distributed to all agents. As an agent for United Van Lines, companies like Holman and Barrett perform a variety of functions. For a particular transaction, a company might be a booking agent, an origin or destination agent, a packing or hauling agent, or a local pick-up agent, or it might perform any combination of these roles. United Van Lines also leases trucks and trailers from its agents, and it may hire the agent's drivers (or independent drivers) to operate under United's authority. For example, while Holman cannot transport goods into Minnesota in its own capacity, it may, as United Van Lines' agent, solicit and book a shipment to or from Minnesota or it may lease its equipment and provide its drivers to United for the Minnesota shipment. United would collect the fee and share it with Holman. The permutations are almost endless when one considers not only the various agency hats worn, but also that a truck tractor may be owned by an independent driver while the trailer may be owned by the moving company, or that a driver may be an employee of either the moving company or United Van Lines or be an independent operator.

Significantly, however, in the transportation of the Chinese art objects from New Jersey to Minnesota, neither Holman nor Barrett was acting as a United Van Lines agent (which accounts, we suppose, for United being dismissed from the suit). Barrett undertook to handle the job on its own, except for hiring Holman to pack the art objects. Holman did only the packing; the crates were loaded by Barrett's drivers, who also did the hauling.

Over the years, Holman has provided some services for Barrett when both companies were acting in their independent capacities. In 1977, Barrett drivers, on two occasions, were in New Jersey and short of funds, and Holman provided cash advances. One other time in 1977 Holman provided Barrett's driver with packing material. In 1978, Barrett paid Holman to "look at a job" in New Jersey, and in 1979, Barrett paid Holman $335 to do some small jobs for one of Barrett's customers. In 1981, Holman packed the Chinese art objects, and in October of that year Barrett paid Holman $3,500 for helping with a shipment, although it is unclear what Holman did.

Also over the preceding 15 years, Holman was involved, as an agent of United Van Lines, in 18 transactions of goods shipped to or from Minnesota. In some instances Holman was the booking agent (had the initial contact with the customer and solicited the business); sometimes Holman was the origin agent (handled most of the paperwork for the trip); sometimes Holman was the hauling agent (arranged for the hauling). In at least one of these transactions, Barrett was involved. In some of these transactions, Holman leased its trucking equipment to United for the Minnesota trip or drivers that Holman had used were hired by United for the trip.

The issue before us is whether these "contacts" are sufficient to give Minnesota personal jurisdiction over Holman. A court may exercise jurisdiction over a foreign-state resident if there are sufficient minimum contacts with the forum state and conduct indicating that the nonresident could reasonably anticipate being sued there.

The principles involved are easily stated but not always easy to apply. The due process clause intends "a degree of predictability to the legal system that allows potential defendants to structure their

primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (*quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). The test is whether the defendant had "fair warning" of being sued in the forum state, *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182; the defendant is deemed to have "fair warning" if it has "purposefully directed" its activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and if the plaintiff's alleged injuries "arise out of or relate to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). It is not enough that the contacts be "random," "fortuitous," or "attenuated." *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183; *Hustler Magazine*, 465 U.S. at 774, 104 S.Ct. at 1478. In making this due process analysis, our court has used the five factors approach set out in *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965). *See, e.g., Rostad v. On–Deck, Inc.*, 372 N.W.2d 717, 719 (Minn. 1985).[1] This test, however, is just another way of asking whether the defendant has established enough contacts with Minnesota to justify being sued here and whether those contacts were established on purpose in order to conduct business in this state.

■ It is clear that the transaction giving rise to plaintiff's cause of action against Holman is not, by itself, a sufficient contact with Minnesota. Holman did no more than pack the Chinese art objects in New Jersey for someone else to load and haul to Minnesota. While the goods were going to Minnesota, Holman neither initiated nor participated in the shipment itself, nor did it have authority on its own to ship into Minnesota.[2]

■ Nor do we think that Holman's prior dealings with Barrett, when both were acting as independents, provide sufficient contacts. On those five or six occasions, Holman did no more than accommodate a fellow shipper with some casual assistance (such as advancing money to drivers or furnishing packing material). These contacts were, at best, fortuitous and attenuated and were initiated by Barrett. The tripartite relationship of the defendant, the forum, and the litigation "is defined by the defendant's contacts with the forum *state*, not by the defendant's contacts with *residents* of the forum." *West American Ins. Co. v. Western, Inc.*, 337 N.W.2d 676, 679 (Minn.1983) (emphasis in original).

So, if Holman is to be found subject to Minnesota jurisdiction, something more is needed, and this means Holman's role as an agent for United Van Lines would have to be taken into account. Holman contends the United contacts are irrelevant. Holman first argues that any contacts with Minnesota as a United agent do not count because, under the "fiduciary shield" doctrine, an agent's conduct is the principal's conduct and, therefore, only the principal, here United Van Lines, is charged with that conduct. Holman cites *Washington Scientific Ind., Inc. v. American Safeguard Corp.*, 308 F.Supp. 736 (D.Minn. 1970). Whatever the merits of the so-called "fiduciary shield" doctrine, assuming there are any, the doctrine has no application here. Holman's own conduct does not merge or disappear when it wears United's hat. In determining the due process value of Holman's contacts with Minnesota, we look to what Holman actually did, whether what it did was for itself alone or in United's behalf. *Cf. Hustler Magazine*, 465 U.S. at 781 n. 13, 104 S.Ct. at 1482 n. 13. In this connection, we might add, there is nothing wrong with Holman attempting to structure its business to avoid exposure to far-flung lawsuits. *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182.

---

**1.** The court considers: (1) The quantity of contacts with the forum state; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with these contacts; (4) the interest of the state in providing a forum; and (5) the convenience of the parties.

**2.** Plaintiff points out that Holman (presumably as a United agent) had bid on the entire job of moving the Chinese art objects but had lost out to Barrett. This unsuccessful bid hardly qualifies as a "contact" with Minnesota.

■ First of all, we agree with Holman that simply because it was a member of United Van Lines and had its name listed in United's nationwide directory is not, by itself, a significant contact with every state where the directory is distributed. *Cf. Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 224 (8th Cir.1987) (foreign law firm's listing in Martindale–Hubbell Law Directory given no significance). United's directory indicates the availability of the agents therein listed to be of service, but this kind of solicitation is too diffused, too passive, to be a meaningful contact in a due process jurisdictional sense. It is not the hope of getting business from the directory listing that confers jurisdiction but the extent to which that hope is translated into out-of-state business. In other words, we are back again to the quantity and characteristics of the transactions actually made as an agent of United.

■ In this case, as we have already noted, Holman's activities as a United agent are unrelated to plaintiff's cause of action against Holman. Holman's packaging of the Chinese art objects in New Jersey for Barrett has no connection with the other instances where Holman participated in Minnesota shipments as United's agent. The reasonable expectations of being sued in Minnesota are not the same for Holman when it is acting on its own with its limited I.C.C. authority and when it is acting as United's agent under United's authority. The United States Supreme Court has said that due process is not necessarily offended when the contacts with the forum state do not arise out of the cause of action. *Helicopteros Nacionales,* 466 U.S. at 414, 104 S.Ct. at 1872. But when the contacts are unrelated to the cause of action, they must "constitute the kind of continuous and systematic general business contacts" that show the defendant has subjected itself to the state's jurisdiction. *Id.* at 416, 104 S.Ct. at 1873; *see Perkins v. Benguet*

*Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In other words, the foreign defendant's activities with respect to the forum state must be of such substance that it would not be unfair for defendant to be brought into the forum state's court for a cause of action unrelated to those activities.

■ Here, we conclude, Holman's contacts with Minnesota as a United agent do not meet the requirement of "continuous and systematic general business contacts." We have only 18 Minnesota agency contacts over a period of 15 years. These occasional and indirect contacts do not demonstrate a continuous pattern of business sufficient to make it fair and reasonable to subject Holman to Minnesota's jurisdiction for a cause of action arising out of a transaction unrelated to these other United agent contacts.[3]

We must always keep in mind that the minimum contacts requirement serves two related functions:

> It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

*World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). In this case, we do not believe that Holman's conduct and connection with this state were such that it "should reasonably anticipate being haled into court" in Minnesota. *World–Wide,* 444 U.S. at 297, 100 S.Ct. at 567.

Reversed.

KELLEY, J., took no part in the consideration or decision of this case.

---

**3.** Barrett argues that Holman should be compared to a manufacturer who places its products into the national stream of commerce, such as in *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717 (Minn.1985). There are, however, structural differences between a manufacturer of a product with a distribution system and, as here, the provider of a service who sometimes participates in a national carrier network. We might also note that in *On–Deck,* unlike this case, the foreign manufacturer had a "plethora of indirect contacts" with this state. *Id.* at 721.