**JOHNSON BROTHERS CORPORATION,**
Respondent,

v.

The **ARROWHEAD CO., et al.**, Duluth Visitors and Convention Bureau, Piedmont Fireworks Company, Respondents,

**Rocky Mountain Fireworks Company, Appellant.**

No. C6–90–280.

Court of Appeals of Minnesota.

Aug. 14, 1990.

Thomas Tinkham, Melissa J. Draper, Minneapolis, for Johnson Brothers Corp.

Carol M. Person, Mary Ann Ulishney, Duluth, for The Arrowhead Co., et al.

Mark L. Knutson, Duluth, for Duluth Visitors and Convention Bureau.

John D. Kelly, Duluth, for Piedmont Fireworks Co.

Robert H. Magie, III, Duluth, for Rocky Mountain Fireworks Co.

Considered and decided by FORSBERG, P.J., and KLAPHAKE and MULALLY *, JJ.

## OPINION

KLAPHAKE, Judge.

This appeal is from an order denying appellant Rocky Mountain Fireworks Company's motion to dismiss for lack of personal jurisdiction. We reverse.

## FACTS

On July 4, 1988, The Arrowhead Company, Inc., (Arrowhead) presented a fire-

* Acting as judge of the court of appeals by ap-    pointment pursuant to Minn. Const. art. VI, § 2.

works display in Duluth, Minnesota. During the display, one of the shells failed, fell to the ground and exploded. The resulting fire destroyed approximately $77,671 in construction materials and equipment owned by Johnson Brothers Corporation (Johnson), which were located at an adjacent construction site.

In preparation for the display, Arrowhead contacted Piedmont Fireworks Company (Piedmont), a Kansas corporation, to order fireworks. Piedmont could only fill part of the order but arranged to find the other needed fireworks. Piedmont contacted appellant Rocky Mountain Fireworks (Rocky Mountain), a Colorado corporation, to secure the remainder of the fireworks. Rocky Mountain is a fireworks manufacturer, importer, distributor, wholesaler and retailer with offices and warehouses in both Denver, Colorado and Baton Rouge, Louisiana. Rocky Mountain is a regional distributor for several western and southern states. Minnesota is not included within either of Rocky Mountain's regions of operations. Rocky Mountain has no business office or property in Minnesota, has never had an employee perform a duty in Minnesota, has no agent, distributor or affiliate of any kind in Minnesota, has not associated with or engaged in business with any Minnesota entity, has not advertised in Minnesota and, to the best of its knowledge, has never made a sale of fireworks to a company or individual in this state. Respondents allege the defective fireworks which caused the accident were imported by Rocky Mountain and subsequently provided to Piedmont.

Johnson originally brought suit against Arrowhead, the City of Duluth (City), and the Duluth Visitors and Convention Bureau. Arrowhead and the City asserted cross-claims against Rocky Mountain and Piedmont. Rocky Mountain also asserted cross-claims and moved for dismissal due to lack of personal jurisdiction, arguing that it had no contacts with the State of Minnesota. Rocky Mountain appeals the trial court's denial of its motion for dismissal.

## ISSUES

1. Did Rocky Mountain's participation in pretrial discovery and assertion of cross-claims amount to a waiver of a properly raised jurisdictional defense?

2. Did Rocky Mountain maintain sufficient contacts within the State of Minnesota to establish personal jurisdiction?

## ANALYSIS

### I.

Respondents argue that Rocky Mountain's assertion of cross-claims and participation in discovery constitutes a waiver of its jurisdictional defense.

■ Rocky Mountain properly raised its jurisdictional defense in accordance with Minn.R.Civ.P. 12.02. A party who properly challenges the court's jurisdiction does not waive that defense by subsequently participating in the discovery process. *Wilkie v. Allied Van Lines, Inc.*, 398 N.W.2d 607, 611 (Minn.App.1986); *see Anderson v. Mikel Drilling Co.*, 257 Minn. 487, 496, 102 N.W.2d 293, 300 (1960).

Under the modern rules of civil procedure,

> No defense or objection is waived by being joined with one or more defenses or objections in a responsive pleading or motion.

Minn.R.Civ.P. 12.02. Furthermore, a party is allowed to "state as many separate claims or defenses as the party has regardless of consistency." Minn.R.Civ.P. 8.05.

■ Respondents contend that Rocky Mountain waived its jurisdictional defense by asserting cross-claims in its pleadings. The Minnesota Supreme Court has not determined whether asserting a cross-claim waives the defense of lack of personal jurisdiction. However, the supreme court has held that assertion of cross-claims and a counterclaim does not show an intent to waive a contractual forum selection clause. *Hauenstein & Bermeister, Inc. v. Met–Fab Industries, Inc.*, 320 N.W.2d 886, 892 (Minn.1982). If asserting cross-claims and a counterclaim does not constitute a waiver of contractual rights, such assertions

should not waive a jurisdictional defense grounded in the constitutional right to due process. *See* 1 D. Herr & R. Haydock, *Minnesota Practice*, § 12.6, at 258 (2d ed. 1985). We conclude that asserting cross-claims does not waive a properly raised jurisdictional defense.

## II.

Respondents also contend that Rocky Mountain maintains contact with the State of Minnesota, sufficient both in quantity and quality, to allow the exercise of personal jurisdiction. We disagree.

■ Personal jurisdiction may be asserted over Rocky Mountain if it is subject to Minnesota's long-arm statute, Minn.Stat. § 543.19 (1986), and the assertion of jurisdiction is consistent with the principles of due process. The legislature intended Minnesota's long-arm statute to be given the maximum extra-territorial effect under the due process clause of the Fourteenth Amendment. *Rostad v. On–Deck, Inc.*, 372 N.W.2d 717, 719 (Minn.1985).

"[D]ue process requires the defendant to have minimum contacts with a jurisdiction before being required to defend a lawsuit." *Rostad*, 372 N.W.2d at 719 (citation omitted). When a defendant challenges personal jurisdiction at the pretrial stage, the plaintiff must make a prima facie showing of minimum contacts through its complaint and supporting evidence, "which will be taken as true." *Hardrives, Inc. v. The City of LaCrosse, Wisconsin*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (Minn.1976) (citation omitted). "[I]n doubtful cases, doubt should be resolved in favor of retention of jurisdiction." *Hardrives*, 307 Minn. at 296, 240 N.W.2d at 818 (footnote omitted).

■ In determining whether minimum contacts exist, a court must apply a five-factor test to evaluate:

(1) The quantity of contacts with the foreign state,

(2) The nature and quality of the contacts,

(3) The source and connection of the cause of action of these contacts,

(4) The interest in the state in providing a forum,

(5) The convenience of the parties. *Rostad*, 372 N.W.2d at 719–20 (citations omitted).

■ The first three factors are of primary consideration. *Dent–Air, Inc. v. Beech Mountain Air Service, Inc.*, 332 N.W.2d 904, 907 (Minn.1983). Rocky Mountain admits that factors four and five "would not operate to preclude jurisdiction of this case." We conclude that the quantity, quality and source of Rocky Mountain's contacts with the State of Minnesota are insufficient to support the exercise of personal jurisdiction.

a. Quantity of Contacts.

Rocky Mountain has distribution offices only in Colorado and Louisiana. Rocky Mountain has conducted no business in Minnesota, nor has it engaged in business with any Minnesota entity. Other than the allegation that Rocky Mountain's product was part of Piedmont's supply to Arrowhead and that it contributed to the July 4th accident, respondents are unable to point to a single other example of Rocky Mountain's products entering Minnesota. Moreover, Rocky Mountain asserts that "to the best of its knowledge, it has never sold fireworks of any kind to a Minnesota company [or] individual." Further, Rocky Mountain asserts that "Piedmont called the offices of Rocky Mountain in Denver and ordered the fireworks" and that this was its only contact with Piedmont. On this record Rocky Mountain's contact with Minnesota was clearly an isolated occurrence insufficient to sustain jurisdiction. *See Hardrives*, 307 Minn. at 294, 240 N.W.2d at 817.

b. Nature and Quality of Contacts.

In evaluating the nature and quality of the contacts, a court must determine whether Rocky Mountain "purposefully availed" itself of the benefits and protections of Minnesota law. *Dent–Air*, 332 N.W.2d at 907 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). Requiring purpose-

ful availment insures that a defendant will not have to appear in a jurisdiction solely because of "attenuated contacts" or the "unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The reach of Minnesota's long arm jurisdiction should not be such that "anyone who deals with a Minnesota resident in any way * * * can be brought into the Minnesota courts to respond to a suit." *Walker Management, Inc. v. FHC Enterprises, Inc.,* 446 N.W.2d 913, 914 (Minn. App.1989) *pet. for rev. denied* (Minn. Dec. 15, 1989) (citation omitted).

Purposeful availment may be established through the "stream-of-commerce theory" whereby a state may assert personal jurisdiction over a business if that business "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Rostad,* 372 N.W.2d at 720 (quoting *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). *See Real Properties, Inc. v. Mission Insurance Company,* 427 N.W.2d 665, 668 (Minn. 1988). In *Rostad,* the Minnesota Supreme Court rejected a manufacturer's argument that "purposeful contacts" must be direct contacts because such an interpretation would fail to account for the manufacturer's numerous indirect contacts with Minnesota. The court also cited with approval language from an Iowa Supreme Court case holding that defendants who market their products through intermediaries are subject to jurisdiction in the forum state if

"it is *reasonable to infer* that their commercial transactions resulted in more than insubstantial use and consumption in this state."

*Rostad,* 372 N.W.2d at 721 (quoting *Svendsen v. Questor Corp.,* 304 N.W.2d 428, 431 (Iowa 1981)) (emphasis added).

In *World–Wide Volkswagen,* the United States Supreme Court concluded that the due process analysis was not whether it was foreseeable or likely that a product would find its way into the forum state, but rather, whether

the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there. * * * [Due process] gives a degree of predictability * * * that allows potential defendants to structure their primary conduct with some minimal assurance as to where that conduct will and will not render them liable to suit.

444 U.S. at 297, 100 S.Ct. at 567 (citations omitted). The court concluded that a national distributor working with a regional distributor who promoted "bat weights in Minnesota for at least ten years" should have anticipated Minnesota's exercise of jurisdiction. *Rostad* at 719. On the record before us, there is neither direct contact nor other conduct leading to a reasonable inference that commercial transactions resulted in "more than insubstantial use and consumption" of Rocky Mountain's products in Minnesota. Rocky Mountain marketed and distributed its products only in western and southern states. We conclude Rocky Mountain could not reasonably anticipate being subject to jurisdiction in Minnesota.

Respondents, however, argue that Rocky Mountain made an intentional effort to reach a broad market by advertising in the Fireworks Buyers Guide & Trade Directory. The advertisement consists of a photocopy of a business card stating its business and showing its Louisiana and Colorado locations. This listing does not, by itself, show that Rocky Mountain's products have entered the stream-of-commerce. *See Real Properties, Inc. v. Mission Insurance Co.,* 427 N.W.2d 665, 669 (Minn.1988) (packager's listing in United Vanlines' National Directory is too passive and diffused to be a meaningful contact for jurisdictional purposes). There is no evidence that Rocky Mountain sought to establish a national market by its advertising.

We conclude that Rocky Mountain's contact with Minnesota occurred only because

of the unilateral actions of Piedmont and that Rocky Mountain was a third party to the transaction between Arrowhead and Piedmont. Had Piedmont been able to fill its fireworks order, Rocky Mountain would have had no contact with the State of Minnesota. There is no evidence showing Rocky Mountain's purposeful availment of this forum.

c. Source of the Contacts.

The contact between Rocky Mountain and Minnesota occurred only because of Piedmont's desire to fill its fireworks order. Thus, the source and connection of the contact does not weigh in favor of jurisdiction.

We conclude that neither the quantity, quality nor source of the contacts alleged are sufficient to support jurisdiction over Rocky Mountain.

## DECISION

Respondents have failed to show that Rocky Mountain has sufficient minimum contacts with the state in order to support the exercise of personal jurisdiction. The order of the district court denying appellant's motion to dismiss is reversed. The action against Rocky Mountain is dismissed for lack of personal jurisdiction.

Reversed.

FORSBERG, J., dissents with an opinion.

FORSBERG, Judge (dissenting):

I respectfully dissent. I believe sufficient contacts can be inferred from the character of the business involved here. *See Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 441–42, 176 N.E.2d 761, 766 (1961).

The facts establish Rocky Mountain sold allegedly defective fireworks to Piedmont, a Kansas distributor, who resold the fireworks to Arrowhead for use in Minnesota. The facts further establish Rocky Mountain deploys a sales force over a ten-state area stretching from Idaho to Alabama. Finally, Rocky Mountain advertises in the Fireworks Buyers' Guide and Trade Directory, which is published annually and mar-

keted throughout the United States. In one of its advertisements, Rocky Mountain describes itself as a "Manufacturer/importer/distributor/wholesaler" of fireworks.

Given these facts, I believe the quantity of contacts weighs in favor of jurisdiction. Although Rocky Mountain apparently has no direct contacts with Minnesota, sufficient indirect contacts can be inferred. By purposefully advertising in a national trade directory, by manufacturing and importing fireworks, and by selling those fireworks to other distributors such as Piedmont, Rocky Mountain is indirectly seeking to serve a nationwide market. The sale of fireworks in this case thus should not be viewed simply as an isolated occurrence. While Rocky Mountain could limit sale and distribution of its products to certain states, it has made no attempt to do so. An importer, manufacturer, and distributor cannot insulate itself from a state's jurisdiction merely because it fails to control or does not know the ultimate destination of its products. *See Rostad v. On–Deck, Inc.*, 372 N.W.2d 717, 721 (Minn.) (quoting *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 285 (3rd Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981)), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985).

I believe the remaining factors also weigh in favor of jurisdiction. The nature of Rocky Mountain's contacts is sales. It has profited by sale of its fireworks in Minnesota and elsewhere, even though those sales may often be accomplished through other distributors. The source of the cause of action, the selling of allegedly defective fireworks, is undisputedly related to Rocky Mountain's contacts. As noted by the majority, the last two factors, the interest of Minnesota in providing a forum and the convenience of the parties, are in favor of jurisdiction.

Finally, I find this case distinguishable from *Real Properties, Inc. v. Mission Ins. Co.*, 427 N.W.2d 665 (Minn.1988). As noted by Justice Simonett, there are "structural differences between a manufacturer of a product with a distribution system and * * * the provider of a service." *Id.* at 669

n. 3. As an importer, manufacturer, and distributor, Rocky Mountain places its products in the national stream of commerce with the expectation that those products will be purchased in Minnesota and elsewhere.

For these reasons, I would affirm the denial of Rocky Mountain's motion to dismiss for lack of personal jurisdiction.