Stanley STANEK, et al., Respondents,

v.

A.P.I., INC., et al., Defendants,

Lac d'Amiante du Quebec,
Ltee, Appellant.

Robert LINDHOLM, Respondent,

v.

A.P.I., INC., et al., Defendants,

Cassiar Mining Corp., Appellant.

Nos. C8–91–453, CX–91–518.

Court of Appeals of Minnesota.

Aug. 27, 1991.

Review Denied Oct. 31, 1991.

**830**

Michael A. Jaksa, Shermoen, Leduc & Jaksa, International Falls, for Stanley Stanek, et al.

Eric J. Magnuson, Patricia A. Burke, Stephen O. Plunkett, Rider, Bennett, Egan & Arundel, Minneapolis, Roy A. Cohen, Porzio, Bromberg & Newman, Morristown, N.J., for Lac d'Amiante du Quebec, Ltee.

Dale J. Craft, David C. Thompson, Craft, Thompson & Boechler, Fargo, N.D., for Robert Lindholm.

Gary J. Haugen, Mark W. Lee, Maslon, Edelman, Borman & Brand, Minneapolis, Wendy S. White, Elizabeth Runyan Geise, J. Theodore Gentry, Shea & Gardner, Washington, D.C., for Cassiar Min. Corp.

Considered and decided by PARKER, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

PARKER, Judge.

Lac D'Amiante du Quebec, Ltee, formerly known as Lake Asbestos of Quebec, Ltd. ("LAQ"), moved the trial court to dismiss Stanley Stanek's and Robert Lindholm's personal injury lawsuits against it for lack of personal jurisdiction. The trial court denied the motion. LAQ appeals from this order.[1] Stanek and Lindholm challenge the appealability of the order. LAQ moved this court to strike portions of Stanek's and Lindholm's brief. We affirm.

## FACTS

Respondents Stanley Stanek and Robert Lindholm brought personal injury claims against miners of raw asbestos fiber and manufacturers and distributors of products containing asbestos. LAQ is in the business of mining, milling and selling raw asbestos fiber.

Stanek and Lindholm have used and been exposed to asbestos and asbestos-containing products through their employment. As a result, they allegedly suffer from asbestos-caused pulmonary diseases, cancer and disability.

---

1. Cassiar Mining Corp. similarly moved to dismiss for lack of personal jurisdiction and appealed from the trial court's order denying its motion. We do not address Cassiar's appeal, because respondents' counsel indicated in briefs and at oral argument that they settled their case with Cassiar.

Since 1952, LAQ has been a Delaware corporation, with its principal place of business in Black Lake, Province of Quebec, Canada. LAQ has supplied raw asbestos fiber to a number of manufacturers, including Armstrong World Industries; Fiberboard Corporation; H.K. Porter Company, Inc.; Owens–Corning Fiberglas Corporation; Raybestos Manhattan (a/k/a Raymark); United States Gypsum Company; and United States Mineral Products Company.

LAQ does not maintain an office in Minnesota or employ any officers or employees in Minnesota. It has never had a subsidiary company doing business in Minnesota and has never been registered as a foreign corporation doing business in Minnesota. In addition, it does not maintain any bank accounts in Minnesota; own or lease any real or personal property in Minnesota; have a listing in any Minnesota telephone directory; have a Minnesota mailing address; or advertise in the Minnesota media.

LAQ did sell raw asbestos fiber, "F.O.B. Black Lake, Quebec," to a Ruberoid plant in Minneapolis between 1959 and 1963. LAQ dealt with a Minnesota sales representative in the mid–1960s. LAQ corresponded with 3M Company five times between May 1962 and November 1964 regarding the potential sale of raw asbestos fiber, and an LAQ salesman visited 3M in St. Paul in 1963. LAQ mailed price lists to 3M in 1970, 1974 and 1976.

## ISSUES

1. Is a pretrial order denying a motion to dismiss for lack of personal jurisdiction appealable as of right?

2. Should this court consider on appeal documents which were filed and provided to the trial judge but returned by the court administrator due to a filing technicality?

3. Does LAQ have sufficient minimum contacts with Minnesota to permit exercise of personal jurisdiction over it in Minnesota?

## DISCUSSION

### I

■ An order denying a motion to dismiss for lack of personal jurisdiction is appealable as of right. *See In re State & Regents Asbestos Cases*, 435 N.W.2d 521, 522 (Minn.1989) (orders granting or denying pretrial motions to dismiss for lack of personal jurisdiction are appealable as a matter of right under principles independent of the appellate rules); *S.B. Schmidt Paper Co. v. A to Z Paper Co.*, 452 N.W.2d 485, 487 (Minn.App.1990) ("appeal from an order denying a pretrial motion to dismiss for lack of personal jurisdiction is properly before this court because such orders are constitutionally appealable as of right").

LAQ was not required to seek discretionary review under Minn.R.Civ.App.P. 105. Thus, its appeal is proper.

### II

■ LAQ moved to strike the deposition excerpts of William F. Justice at pages 45–50 of Stanek's and Lindholm's appendix and the references to this appendix at page five of their brief. This deposition testimony indicates that LAQ was a major supplier of Canadian asbestos to the United States market. LAQ asserts that these deposition pages were not filed with the trial court. *See* Minn.R.Civ.App.P. 110.01; *Safeco Ins. Co. v. Diaz*, 385 N.W.2d 845, 847 (Minn. App.1986), *pet. for rev. denied* (Minn. June 30, 1986) (appellate court cannot base its decision on matters outside the record on appeal).

Stanek and Lindholm argue that these deposition excerpts were included as appendices to a joint supplemental memorandum of plaintiffs. The memorandum was initially filed in the court administrator's office on February 13, 1991. On February 14, 1991, a deputy court administrator returned the memorandum with a note indicating that original memoranda must be filed for each case. Stanek and Lindholm had filed one original for their two cases. Copies of the memorandum and its appendix were served on LAQ and copies were sent to the trial judge.

The deposition excerpts were available for the trial court to consider. The original was omitted from the record because of a technical necessity of the court administrator's office; this does not vitiate the fact that the deposition excerpt was originally filed and before the trial court.

Under Minn.R.Civ.App.P. 110.05, this court can correct an omission from the record. We deny LAQ's motion to exclude and strike a portion of respondents' brief and appendix. We also deny LAQ's motion for attorney fees and sanctions.

### III

■ Two criteria must be met before a Minnesota court may exercise personal jurisdiction over a nonresident defendant: (1) the long-arm statute, Minn.Stat. § 543.19 (1990), must be satisfied; and (2) there must be "minimum contacts" between the defendant and this state to satisfy the due process clause. *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717, 719 (Minn.1985).

■ This court need not defer to the trial court's decision, because the determination of whether personal jurisdiction exists is a question of law. *See Mahoney v. Mahoney,* 433 N.W.2d 115, 117 (Minn.App.1988), *pet. for rev. denied* (Minn. Feb. 10, 1989); *Janssen v. Johnson,* 358 N.W.2d 117, 120 (Minn.App.1984). "The reach of a state's long-arm statute is a question of state law, while the extent to which the reach of the long-arm statute is limited by due process is a question of federal law." *Now Foods Corp. v. Madison Equip. Co.,* 386 N.W.2d 363, 366 (Minn.App.1986), *pet. for rev. granted and summarily vacated,* 395 N.W.2d 926 (Minn.1986).

Personal jurisdiction may be exercised over any foreign corporation in the same manner as if it were a domestic corporation "[a]s to a cause of action arising from any acts enumerated by this subdivision." Minn.Stat. § 543.19, subd. 1 (1990). This subdivision applies if a foreign corporation:

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice * * *.

*Id.*

Both the Minnesota Supreme Court and this court have held that the legislature intended Minnesota's long-arm statute to "have the maximum extraterritorial effect allowed under the due process clause of the federal constitution." *Rostad,* 372 N.W.2d at 719; *S.B. Schmidt Paper v. A to Z Paper,* 452 N.W.2d at 487. The *Rostad* court stated, "the permissibility of an attempted exercise of jurisdiction [under the long-arm statute] may be tested by analyzing whether it meets constitutional muster." *Rostad,* 372 N.W.2d at 719.

Accordingly, personal jurisdiction is proper in this case, where Minnesota workers sustained injuries in Minnesota, so long as the due process clause is satisfied.

■ When a defendant moves to dismiss for lack of personal jurisdiction at the pretrial stage, "the plaintiff must make a prima facie showing of minimum contacts through its complaint and supporting evidence, 'which will be taken as true.'" *Johnson Bros. Corp. v. Arrowhead Co.,* 459 N.W.2d 160, 163 (Minn.App.1990) (quoting *Hardrives, Inc. v. The City of La-Crosse,* 307 Minn. 290, 293, 240 N.W.2d 814, 816 (Minn.1976)). "[D]oubt should be resolved in favor of retention of jurisdiction." *Hardrives,* 307 Minn. at 296, 240 N.W.2d at 818, *cited in Johnson Bros.,* 459 N.W.2d at 163.

■ "Due process requires that a defendant have minimum contacts with a jurisdiction before being required to defend against a lawsuit in that jurisdiction." *Rostad,* 372 N.W.2d at 719 (Minn.1985) (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Minnesota uses a five-factor test to determine if minimum contacts exist. *Rostad,* 372 N.W.2d at 719. The court evaluates:

(1) The quantity of contacts with the forum state;

(2) The nature and quality of contacts;

(3) The source and connection of the cause of action with these contacts;

(4) The interest of the state providing a forum; and

(5) The convenience of the parties.

*Id.* at 719–20. Although the last two factors by themselves are insufficient to establish minimum contacts, they merit consideration. *See Now Foods,* 386 N.W.2d at 368.

### 1. *Quantity of Contacts*

■ In *Rostad* the Minnesota Supreme Court explicitly adopted the stream-of-commerce theory for manufacturers or primary distributors to analyze the quantity of the contacts. The *Rostad* court quoted the standard from *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980):

> Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve *directly or indirectly,* the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum *State does not exceed its power under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.*

*Rostad,* 372 N.W.2d at 720 (emphasis added by *Rostad* court).

In *Rostad,* 372 N.W.2d at 722, the Minnesota Supreme Court adopted the holding of *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), although it was applied in a limited way. In *Gray,* 22 Ill.2d at 442, 176 N.E.2d at 767, the Illinois Supreme Court relied on the stream-of-commerce theory and held that personal jurisdiction over a

foreign corporation satisfied due process of law where an Illinois resident sued for injuries sustained when a water heater allegedly exploded. The defendant manufactured safety valves in Ohio which were sold to the water heater manufacturer outside of Illinois. *Id.* at 438, 176 N.E.2d at 764.

In adopting the *Gray* holding, the *Rostad* court stated that even though the actual marketing of the product is done by intermediaries,

> through their actions in marketing their product, [the defendants] sought to serve the Iowa market, and therefore should be amenable to the jurisdiction of the Iowa courts. * * * [I]t is reasonable to infer that their commercial transactions resulted in more than insubstantial use and consumption in this state. *See Gray,* [22 Ill.2d at 441–42, 176 N.E.2d at 766]. This affords a sufficient basis for the conclusion that the [defendants], through the Omaha distributor, indirectly sought to serve the Iowa market, and consequently are subject to suit within this state.

*Rostad,* 372 N.W.2d at 721 (quoting *Svendsen v. Questor Corp.,* 304 N.W.2d 428, 431 (Iowa 1981)).

Similarly, as indicated by William Justice's deposition, LAQ was selling asbestos to companies (large U.S. corporations). This leads to the natural inference that the asbestos fiber was to be put into the nationwide stream of commerce through the marketing of one or more of those major corporations. It is also reasonable to infer that the asbestos reached Minnesota, a major manufacturing and industrial center of the upper Midwest.

According to four justices in *Asahi Metal Indus. Co. v. Superior Court of Calif.,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987), "something more" than the defendant's act of placing the product in the stream of commerce is required to satisfy due process. Five justices, however, refused to join in this part of the opinion, explicated by Justice O'Connor. Thus, we conclude that the stream-of-commerce theory advanced in *Gray* and fol-

lowed in *Rostad* has not been limited by the U.S. Supreme Court.

Having said this, it is evident that there is "quite a bit more" contact with the forum state as presented here. LAQ made direct sales in Minnesota from 1959 to 1963. It has solicited business in Minnesota. More specifically, an LAQ sales representative visited Minnesota in the mid–1960's; it mailed soliciting correspondence to 3M Company's Minnesota plant in 1963; and it mailed price lists to 3M Company in 1970, 1974 and 1976.

LAQ cites a number of clearly distinguishable cases. In *Olmsted County v. Trailer Equip. Warehouses*, 421 N.W.2d 395, 396 (Minn.App.1988), this court affirmed a trial court's order dismissing for lack of personal jurisdiction where the manufacturer's sole connection to Minnesota was a trailer hitch it manufactured and sold in Oklahoma. The hitch was installed in a trailer in Oklahoma and the trailer was driven to Minnesota, where the hitch injured a Minnesota resident. Personal jurisdiction did not exist, because the case did not involve a stream-of-commerce theory. *Id.* The manufacturer sold the trailer hitch in another state and it was driven here fortuitously. *Id.*

■ Driving a vehicle to another state and having an accident due to a defective part does not, by itself, provide a basis for personal jurisdiction over manufacturers or distributors. *See World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566 (exercise of personal jurisdiction over an automobile retailer and regional distributor, whose sole connection with the forum state was occurrence of the automobile-related injury, was incompatible with the due process clause). In *World–Wide Volkswagen* the retailer and regional distributor were not casting the automobiles into a nationwide market. At most, they were putting vehicles in use anywhere roads might lead them. *Id. World–Wide Volkswagen* and *Olmsted County* present factual situations that differ from the modern commerce situation in *Gray* and present here.

In *Johnson Bros. Corp.*, 459 N.W.2d at 161, this court, reversing the trial court, dismissed for lack of personal jurisdiction where Rocky Mountain Fireworks, a fireworks manufacturer, had, at most, a tenuous contact with this state. It supplied some fireworks to a Kansas fireworks supplier, who supplied fireworks to a company preparing a Duluth fireworks display. *Id.* at 162. Rocky Mountain Fireworks had specifically limited its distribution to a region which did not include Minnesota. *Id.* at 164. The contact in *Johnson Bros.* is distinguishable from the contacts in the instant case. For example, LAQ did not specifically limit its distribution region.

Based on LAQ's direct contacts and its indirect contacts through the stream of commerce with Minnesota, we conclude that the quantity of LAQ's contacts with Minnesota weighs in favor of exercising personal jurisdiction.

### 2. *Nature and Quality of Contacts*

■ In evaluating this factor, this court should determine whether LAQ "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of [Minnesota] law." *Dent–Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 (Minn.1983) (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). Purposeful availment may be established, like quantity of contacts, through a stream-of-commerce theory. *See Rostad*, 372 N.W.2d at 720–22.

In *Gray*, 22 Ill.2d at 442, 176 N.E.2d at 766, the court inferred sufficient number and quality of contacts as a reasonable assumption from the character of the business. In *Rostad*, 372 N.W.2d at 722, the nature of the manufacturer's contact was sales: "It has profited by sale of thousands of its bat weights in Minnesota."

Similarly, LAQ has profited from the widespread sale of asbestos. It is unknown which of LAQ's sales reached Minnesota, other than those to Ruberoid. Nevertheless, its extensive sales to large American distributors suggest contacts

sufficient in nature and quality so that a reasonable inference may be drawn from the character of the business. *See Gray*, 22 Ill.2d at 442, 176 N.E.2d at 766.

Despite its apparent remoteness, the insidious and long-term effects of asbestos have been recognized due to the unique character of the product and the character of the resulting disease. *DeCosse v. Armstrong Cork Co.*, 319 N.W.2d 45, 48–49 (Minn.1982). Accordingly, the nature and quality of LAQ's contacts with Minnesota weigh in favor of finding sufficient minimum contacts to satisfy due process.

### 3. *Source of Contacts*

This factor does not add to or change our analysis of the first two factors.

### 4. *Interest in Providing a Forum*

Section IIB of the *Asahi* opinion discusses "traditional notions of fair play and substantial justice." This is the only section of the opinion, other than the fact section, in which a majority of the justices concur. In *Asahi* the plaintiff, who had a motorcycle accident while in California, had settled his case in the Superior Court. *Id.* 480 U.S. at 106, 107 S.Ct. at 1029. The case presented to the Supreme Court was a third-party indemnity action by a Taiwanese manufacturer of a motorcycle tire tube against a Japanese manufacturer of the tube's valve assembly. *Id.* Neither party was located within 5,000 miles of the California shore. Consequently, California had scant interest in providing a forum for the action. That situation is not presented to us.

We are confronted with the cases of Minnesota workers who allege they have been afflicted with terrible diseases as a result of exposure to asbestos. Minnesota has a strong interest in providing a forum for their cases. Indeed, it is inscribed in our constitution:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.

Minn. Const. art. I, § 8.

### 5. *Convenience of the Parties*

LAQ, which is located in Quebec, is a Delaware corporation doing business in the United States. Minnesota, a border state, is not greatly inconvenient to this Canadian company. Thus, this factor, as do the others, weighs in favor of exercising personal jurisdiction over LAQ.

### DECISION

LAQ's appeal is as of right. We deny LAQ's motion to strike a portion of respondents' appendix and brief. Accordingly, attorney sanctions against respondents' counsel are inappropriate.

This case presents adequate minimum contacts to satisfy due process of law. The trial court's exercise of personal jurisdiction over LAQ is proper.

Affirmed.