**NATIONAL CITY BANK OF MINNEAPOLIS,**
Respondent,

v.

**CERESOTA MILL LIMITED PARTNERSHIP, et al.,**
Respondents,

**The City of Minneapolis, et al., Respondents,**

**Howard B. Bergerud, et al., Respondents,**

**Gregory J. Hayes, et al., Respondents,**

**Robert C. Whitney, et al., Defendants,**

**The Estate of Thomas M. Whitney, et al., Respondents,**

**Muriel Jayne Hayes, Respondent.**

**and**

**Donna J. WHITNEY, individually and in her capacity as Co-Trustee of and on behalf of the Whitney Revocable Trust, the Whitney Family Trust and the Whitney Tax Deferral Trust, and in her capacity as Executrix of and on behalf of the Estate of Thomas Whitney, Third Party Plaintiff, Respondent,**

v.

**David W. MITCHELL, Third Party Defendant, Respondent,**

**McCutchen, Doyle, Brown & Enersen, Third Party Defendant, Respondent,**

**Hopkins & Carley, Third Party Defendant, Petitioner, Appellant,**

**Roger D. Gordon, et al., Third Party Defendants, Respondents.**

No. C6-91-659.

Supreme Court of Minnesota.

July 31, 1992.

---

**19.** *See State ex rel. Mattson v. Kiedrowski,* 391  N.W.2d 777, 782–83 (Minn.1986).

David L. Hasmall, Fred L. Morrison, J. Michael Schwartz, John M. Baker, Popham, Haik, Schnobrich & Kaufman, Minneapolis, for appellant.

William S. Rosen, Rosen, Meyer & Simons, St. Paul, and Herbert Stern, David S. Stone, Stern & Greenberg, Roseland, N.J., for Donna J. Whitney, et al.

Larry M. Wertheim, Mary G. Dobbins, Holmes & Graven, Minneapolis, for National City Bank of Minneapolis.

William Kampf, Ann Ladd, Fredrikson & Byron, P.A., Minneapolis, and Paul H. Ravich, Robins, Kaplan, Miller & Ciresi, Minneapolis, and Steven D. DeRuyter, Leonard, Street & Deinard, Minneapolis, for Ceresota Mill Ltd. Partnership, et al.

Jerome F. Fitzgerald, Asst. City Atty., Minneapolis, for City of Minneapolis and MCDA.

Martin G. Weinstein, Richard G. Wilson, Maslon, Edelman, Borman & Brand, Minneapolis, and Charles R. Breyer, Coblentz, Cahen, McCabe & Breyer, San Francisco, Cal., for David W. Mitchell.

Gregory J. Collins, Mulligan & Bjornes, Minneapolis, for Muriel Jayne Hayes.

Kay N. Hunt, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for Roger D. Gordon, et al.

Craig W. Gagnon, Michael J. Bleck, Oppenheimer, Wolff & Donnelly, Minneapolis, for McCutchen, Doyle, Brown & Enersen.

Louis W. Brenner, Minneapolis, for Howard B. Bergerud, et al.

Joel A. Seltz, Minneapolis, for Gregory J. Hayes, et al.

250

TOMLJANOVICH, Justice.

In this case we are asked to decide whether Minnesota courts may properly exercise personal jurisdiction over a California law firm being sued by a California resident over advice given in connection with a Minnesota property development project. We hold that the California firm had sufficient contacts with the state so that personal jurisdiction is authorized under Minnesota's long-arm statute, Minn. Stat. § 543.19 (1990), and is consistent with the due process clause of the 14th amendment.

This third-party action arises from a lawsuit against the guarantors of bonds issued to finance development of Minneapolis Block 10, the riverfront area that includes the Whitney Hotel. The developers defaulted on bond and construction guarantees, and the trial court granted summary judgment against the third-party plaintiff-respondent (hereinafter respondent) for $30,000,000. Entry of judgment was stayed pending the outcome of this third-party action alleging legal malpractice.

Because this appeal arises from a motion to dismiss for lack of personal jurisdiction, we take the respondent's allegations and supporting evidence as true for our analysis. *Dent–Air, Inc. v. Beech Mountain Air Service*, 332 N.W.2d 904, 907 n. 1 (Minn.1983) (citing *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976)).

Respondent has alleged that the third-party defendant-appellant (hereinafter appellant) committed legal malpractice while representing her interests in the Block 10 development. At the time of some of the alleged malpractice, third-party defendant David W. Mitchell was a partner in appellant's predecessor firm. Mitchell left in May 1987 to join another California firm, where he continued to represent respondent. He and his current law firm are individual third-party defendants in this action but do not dispute jurisdiction.

From 1981–86, California residents Thomas and Donna Whitney[1] retained the California law firm of Hopkins, Mitchell & Carley, with Mitchell providing direct representation. The firm's attorneys were not licensed to practice in Minnesota and did not solicit business here. In 1984, the Whitneys and the Whitney Revocable Trust became partners in a group formed to develop Block 10. At that point, Minnesota counsel provided all legal services on the Block 10 project. On May 31, 1985, at Minnesota counsel's request, appellant provided two opinion letters on the validity of the Whitney trusts and the trustees' authority to act as guarantors. The opinion letters stated that they were based on a reading of the guarantee agreements, although an associate at appellant's firm has stated that Thomas Whitney instructed him not to examine the guarantee agreements because the Whitneys had Minnesota counsel for such purposes.

In 1985, the Whitneys signed documents guaranteeing completion and loan repayment on the Block 10 project. In all, there were four bond guarantees totalling $30,000,000. The original guarantees included an escape clause which provided that if a guarantor died, "the estate of the deceased guarantor and his/her spouse" could be released from all obligations so long as the remaining guarantors had a combined net worth of $12,000,000 or a substitute guarantor was found. On November 9, 1986, Thomas and Donna Whitney signed a document indemnifying and releasing the Hayes family, a co-investor, from the Block 10 project. Appellant, who played no part in executing that document, interprets it to include a promise that the Whitney interests would not seek a release from their own Block 10 obligations so long as the Hayes group was bound.

On November 13, 1986, Thomas Whitney died. He was replaced as a co-Trustee by Mark Guidry. On or about November 17, 1986, Mitchell called Donna Whitney and said he was getting calls about the Block 10 project. He offered to represent her, and she and Guidry hired appellant to advise them about the Minnesota project. On December 18, 1986, in appellant's Califor-

1. Donna Whitney has since changed her residence to Florida.

nia office, Donna Whitney and Guidry executed a restated release and indemnification agreement with the Hayes family. Appellant advised them that it created no new liabilities beyond the original Hayes release agreement.

Respondent alleges that Mitchell never informed her of the escape clause after Thomas Whitney's death and that he did not personally review the documents until almost a year later. Donna Whitney and Guidry have testified that by early 1987 they wanted to withdraw from the Block 10 project but did not because Mitchell said they were bound by the various guarantees they had signed. Respondent asserts that Mitchell voiced that opinion in early 1987, while in Minnesota. Ultimately, the Block 10 project floundered and summary judgment was granted against respondent on the guarantee agreements.

Respondent alleges that appellant committed malpractice by failing to carefully read the guarantee agreements, taking Minnesota counsel's word for what the guarantee agreements contained, failing to apprise respondent of the escape clause, advising respondent that she could not get out of the agreement and advising her to sign a release of a co-guarantor that arguably waived respondent's right to drop out.

The only act of alleged malpractice to occur in Minnesota was the statement that respondent could not get out of the guarantee agreements. It is undisputed that the majority of appellant's legal services were delivered in California, but Mitchell, on behalf of respondent, did make four trips to Minnesota for meetings on the Block 10 project, and appellant billed respondent for Mitchell's time and expenses.[2] In addition, Mitchell, on behalf of appellant, had frequent contact with Minnesota through letters, telephone calls and facsimile transmissions regarding the Block 10 project, but there is no specific allegation of negligence in any of those electronic contacts.

■ On appeal we are asked to decide whether Mitchell's contacts with Minnesota were sufficient to subject appellant to personal jurisdiction. The trial court and a divided court of appeals panel held in the affirmative. 476 N.W.2d 787. Jurisdiction may be exercised over a nonresident only if it is permitted under the state's long-arm statute and if jurisdiction is consistent with due process. *Sherburne County Social Serv. ex rel. Pouliot v. Kennedy*, 426 N.W.2d 866, 867 (Minn.1988). Minnesota's long-arm statute, Minn.Stat. § 543.19 (1990), provides in pertinent part:

Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state * * * may exercise personal jurisdiction over * * * any non-resident individual * * * if, in person or through an agent, the * * * non-resident individual:

\* \* \* \* \* \*

(b) Transacts any business within the state, or

(c) Commits any act in Minnesota causing injury or property damage, or

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice;

\* \* \* \* \* \*

Subd. 3. Only causes of action arising from acts enumerated in subdivision 1 may be asserted against a defendant in an action in which jurisdiction over the defendant is based upon this section.

■ There is no doubt that Minn.Stat. § 543.19 subd. 1(b) is satisfied because appellant clearly transacted business in the state. A partner in the firm traveled to Minnesota to represent respondent's interests in at least four meetings and billed respondent for his time and expenses. The

---

**2.** After leaving respondent's firm, Mitchell joined the California firm of McCutchen, Doyle, Brown & Enersen. He continued to represent the Whitney interests in the Block 10 matter and traveled to Minnesota 32 more times for various meetings involving the project.

court of appeals held that subd. 1(c) and (d) also are satisfied, but there is no need to reach those questions. The elements of subd. 1 are disjunctive, so the subdivision is fully satisfied when one element is satisfied. There is no purpose to be served by deciding whether subd. 1 is satisfied on multiple grounds.

The more hotly contested question is whether Minn.Stat. § 543.19, subd. 3, has been satisfied. That subdivision requires that the cause of action arise from the transaction of business discussed in subd. 1. Appellant argues, essentially, that any malpractice in this case occurred in California and that appellant's contacts with Minnesota were after the fact, so that respondent's cause of action does not arise from acts or transactions in Minnesota.

The argument advanced by respondent, and adopted by the trial court and the court of appeals, is that Minn.Stat. § 543.19, subd. 3, should not be read so narrowly because under the cases of this court, the statute is to "have the maximum extraterritorial effect allowed under the due process clause of the federal constitution." *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717, 719 (Minn.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985); *see also Vikse v. Flaby,* 316 N.W.2d 276, 281 (Minn.1982) (long-arm statute was drafted to extend jurisdiction to the permissible limits allowed by constitutional due process); *Hunt v. Nevada State Bank,* 285 Minn. 77, 109, 172 N.W.2d 292, 304 (1969), *cert. denied,* 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970) (legislature intended "to extend the extraterritorial jurisdiction of our courts to the maximum limits consistent with constitutional limitations").

It is not necessary in this case to decide whether the requirements of Minn.Stat. § 543.19, subd. 3, mirror the requirements of due process or are more restrictive. That is because one of respondent's claims is that Mitchell, on behalf of appellant, negligently advised respondent in Minnesota that she could not be released from the various Block 10 agreements. It may well turn out that, as appellant contends, Mitchell's statement was correct because of the

waiver clauses in the Hayes agreements. But at this stage of the proceeding, under our analysis in *Dent–Air, Inc.* and similar cases, we must take the respondent's claims as true. Viewed in that light, respondent's cause of action arose, in part, from appellant's transaction of business in the state. That satisfies Minn.Stat. § 543.-19, subd. 3. It is not important that most of appellant's alleged malpractice occurred in California. That argument goes to which state's law should govern this litigation. It does not change the fact that appellant knowingly transacted business in Minnesota. Respondent's claim of defective legal advice arises from that transaction of business. That is enough to meet the requirement of Minn.Stat. § 543.19, subd. 3, and to fully satisfy the long-arm statute.

■ We next must determine whether subjecting appellant to personal jurisdiction is consistent with due process guarantees under the 14th amendment to the United States Constitution. "Due process requires that a defendant have minimum contacts with a jurisdiction before being required to defend against a lawsuit in that jurisdiction." *Rostad,* 372 N.W.2d at 719 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). "To have minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities within the jurisdiction." *Id.* (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). In addition, the cause of action must arise out of or be related to the defendant's contact with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). Finally, in doubtful cases, courts should lean toward finding jurisdiction. *Hardrives, Inc.,* 307 Minn. at 296, 240 N.W.2d at 818.

■ Minnesota uses a five-factor test, first enunciated in *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir.1965), to determine if minimum contacts exist. The factors to be considered are (1) the

quantity of the contacts with the forum state; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with the contacts; (4) the interest of the state in providing a forum; and (5) the convenience of the parties. *See Rostad,* 372 N.W.2d at 719–720; *Vikse,* 316 N.W.2d at 282. The first three factors are the most important. *Dent–Air, Inc.,* 332 N.W.2d at 907.

### 1. Quantity of contacts

This factor weighs in favor of jurisdiction. Appellant was physically present in Minnesota at least four times for meetings on the Block 10 project. In addition, appellant engaged in numerous telephone calls and facsimile transmissions to and from the state.

### 2. Nature and quality of contacts

Appellant's contacts were in the nature of providing legal advice regarding a property development. Appellant billed respondent for the time spent in Minnesota and for travel. "It is vital that the defendant's 'conduct and connection with the forum State are such that he should *reasonably anticipate* being haled into court there.'" *Kreisler Mfg. Corp. v. Homstad Goldsmith, Inc.,* 322 N.W.2d 567, 571 (Minn. 1982) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)) (emphasis in *Kreisler*). "The test is whether the defendant had 'fair warning' of being sued in the forum state." *Real Properties, Inc. v. Mission Ins. Co.,* 427 N.W.2d 665, 668 (Minn.1988) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985)). "[A] defendant is deemed to have 'fair warning' if it has 'purposefully directed' its activities at residents of the forum." *Id.* (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)).

There is no doubt that appellant "purposefully directed" its activities toward the state. After Thomas Whitney died, appellant, through Mitchell, contacted Donna Whitney and offered to help her deal with

difficulties in the Block 10 project. Appellant proceeded to transact business with other participants in Block 10, at first electronically and later in person, billing respondent for time and travel. It is true that appellant did not purposefully direct its activities at *residents* of Minnesota because respondent was a California resident. But that is not crucial in this case because appellant, a firm of trained and licensed attorneys, has special knowledge of minimum contacts law and had to know that when a firm member transacted legal business in Minnesota the firm ran the risk of becoming subject to jurisdiction. In sum, there is no question but that the nature and quality of appellant's contacts with Minnesota would support the exercise of jurisdiction.

### 3. Source and connection of cause of action with contacts

The source of respondent's cause of action was legal advice rendered partly in Minnesota but mostly in California. At first glance, the connection between appellant's legal advice and Minnesota contacts appears tenuous because there is only one act of possible malpractice that occurred in the state. On closer inspection, however, the connection is more solid. It must be noted that almost all of appellant's advice to respondent, whether in Minnesota or California, involved a Minnesota development. And appellant's involvement in that project included frequent electronic communications and four personal visits for business meetings. On balance, those facts show a reasonably close connection between the source of respondent's cause of action and appellant's contacts with the forum and support the exercise of jurisdiction.

### 4. Interests of the state

Minnesota has a strong interest in the underlying Block 10 development and in seeing that resident financial institutions have a forum to enforce their contracts. But contrary to respondent's assertion at oral argument, the state interest in the particular dispute between appellant and

respondent is of little direct interest. Respondent argues, in effect, that jurisdiction should lie in this case because the Whitneys invested millions of dollars in a project of economic importance to the state. That argument misapprehends the law of jurisdiction. While the state may have a significant interest in the underlying transaction, it has a lesser interest in how the various third-party plaintiffs and defendants sort out their claims. In sum, the state interest is a neutral factor in our analysis.

### 5. Convenience of the parties

This factor weighs strongly in favor of jurisdiction. First, all of the parties except appellant have conceded Minnesota jurisdiction, so the case will proceed here with or without appellant. It might be argued that jurisdiction is inconvenient for appellant, but that argument does not withstand scrutiny. Appellant would have to closely monitor the case here even if it does not participate because it stands to be vicariously liable for any negligent acts committed by Mitchell when he was appellant's agent. Because this complex case will be heard in Minnesota with or without appellant, it makes sense to have all parties in the same place to save judicial resources and to facilitate settlement, if that proves to be appropriate.

Looking at all five *Aftanase* factors, we hold that appellant is subject to personal jurisdiction. Appellant had numerous contacts with the state, both electronically and in person. Appellant had at least four high-quality personal contacts with the state, attending meetings and billing respondent for the time. The source of respondent's cause of action is allegedly defective legal advice, which is connected to the forum because it all involved a Minnesota project and part of it was given in the state. The state interest in the dispute between respondent and appellant is limited, but the convenience of the parties, and efficient use of judicial resources, would be served by exercising jurisdiction. Four of the five *Aftanase* factors are satisfied, including the three most important ones. As a result, we are satisfied that it is fair to require appellant to submit to jurisdiction in this state.

It is worth noting what we are not deciding today. We offer no opinion on whether any attorney, in fact, acted negligently. We express no view on whether any spousal right of release from the guarantee agreements extended to the Whitney trusts. Finally, we express no opinion on whether this lawsuit should be governed by the laws of California or Minnesota. The parties have raised these matters in one form or another, but they are not relevant to the narrow jurisdictional question before us today. We are confident that those issues will be properly sorted out by the trial court at the appropriate time. To that end, this case is remanded to the trial court for proceedings consistent with this opinion.

Affirmed.

GARDEBRING, J., took no part in the consideration or decision of this case.