James Donald JUELICH, Appellant,

v.

YAMAZAKI MAZAK OPTONICS CORPORATION, a/k/a Yamazaki Mazak Minokamo Corporation, Respondent,

Mazak Nissho Iwai Corporation, Respondent,

Gladwin Machinery & Supply Co., Defendant,

Meikikou Corporation, Respondent,

and

Meikikou Corporation, Third Party Plaintiff,

v.

Aries Precision Sheet Metal Company, Third Party Defendant,

and

James Donald Juelich, Plaintiff,

v.

Yamazaki Mazak Optonics Corporation, a/k/a Yamazaki Mazak Minokamo Corporation, et al., Appellants,

Gladwin Machinery & Supply Company, Defendant,

Meikikou Corporation, Respondent,

and

Meikikou Corporation, third party plaintiff, Respondent,

v.

Aries Precision Sheet Metal Company, Third Party Defendant.

Nos. A03–174, A03–228.

Court of Appeals of Minnesota.

Oct. 14, 2003.

Cory P. Whalen, Sieben, Grose, Von Holtum & Carey, Ltd., and Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN, for appellant James Juelich.

Robert D. Brownson, Kristi K. Warner, Brownson & Ballou P.L.L.P., Minneapolis, MN, for respondent Meikikou Corporation.

Carl Paul Carver, Kevin P. Curry, Bowman and Brooke, L.L.P., Minneapolis, MN, for appellant Mazak Nissho Iwai Corporation.

Blake W. Duerre, Anton J. van der Merwe, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for ap-

pellant Yamazaki Mazak Optonics Corporation.

Considered and decided by WILLIS, Presiding Judge; TOUSSAINT, Chief Judge; and SHUMAKER, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Appellant James Juelich, a Minnesota resident, was injured by a scissor-lift table manufactured by respondent Meikikou. Juelich sued Meikikou, appellant Yamazaki, the manufacturer of a component of the table, and appellant Mazak Corporation, an international distributor. The district court dismissed respondent Meikikou for lack of personal jurisdiction, and appellants challenge the dismissal in consolidated appeals. Because the district court did not err in concluding that there were insufficient contacts for personal jurisdiction and that respondent had not consented to personal jurisdiction by its actions in bringing a third-party lawsuit and engaging in cross-claims, we affirm.

## FACTS

After a January 25, 2001 work-related injury, appellant James Juelich commenced this personal injury and products liability action in district court. Respondent Meikikou Corporation was first named in and served with the second amended complaint in June 2001.

Juelich's injury arose from his maintenance work on a scissor-lift table, which collapsed on his arm. The table was manufactured by respondent Meikikou Corporation, a foreign corporation with its principal place of business in Japan. The table was a component part of a Super Turbo X510 system that also included a laser-cutting machine manufactured by respondent Yamazaki Mazak Optonics Corporation (YMO), a Japanese corporation doing business in Japan. Respondent Mazak Nissho Iwai (MANI), an Illinois corporation, is the international distributor of the system purchased by Aries Precision Sheet Metal Company, a Minnesota corporation and Juelich's employer. The Minnesota supplier of the system, Gladwin Machinery & Supply Company, was dismissed from the suit by agreement of the parties.

On July 6, 2001, Meikikou answered the complaint and asserted lack of personal jurisdiction as an affirmative defense. It then served a cross-claim against Gladwin and a third-party claim against Aries and signed a stipulation allowing cross-claims among Meikikou, YMO, and MANI. Beginning October 30, 2001, Meikikou also commenced discovery, serving requests and responses.

On June 24, 2002, Meikikou moved for dismissal based on lack of personal jurisdiction. Juelich, YMO, and MANI opposed the motion to dismiss, which was heard, along with Juelich's motion to compel Meikikou to produce discovery, on September 26, 2002. In its October 1, 2002 order, the district court ordered Meikikou to completely answer discovery requests and to produce for deposition Meikikou representatives, including Tsutomu Odaguchi, its Managing Director and General Manager of Development.

After receiving letters and Odaguchi deposition excerpts submitted by Meikikou and YMO, the court granted Meikikou's motion to dismiss on November 15, 2002 and subsequently entered judgment on February 4, 2003. Juelich, filed a notice of appeal, which was followed shortly thereafter by YMO and MANI's joint appeals. The appeals were consolidated by this court.

The scissor-lift table involved in Juelich's accident was manufactured by Meiki-

kou at its factory in Japan in 1999. Meikikou sold the table to Ishihara Shoji, a Japanese distributor. On instruction from Shoji, Meikikou delivered the table to Seiko Keisakusho. Meikikou understood at all times that the table would eventually be delivered to YMO and that the table was a component part to the YMO Super Turbo X510 laser-cutting machine, loading system and unloading system.

YMO integrated the table into its laser-cutting machine and sold the system to MANI, the Illinois distributor. MANI then sold the system to Gladwin, MANI's Minnesota distributor, which distributed it to Aries in St. Paul. YMO assembled its laser-cutting machine, but did not assemble the scissor-lift table. YMO did not provide any oral instructions or warnings to Juelich or Aries, but written warnings were provided on various machine labels and in the manuals. YMO provided a copy of an operation manual for the scissor-lift table to MANI, which supplied a copy to Aries. Neither Meikikou nor YMO provided post-sale or post-assembly inspection of the machine at Aries.

On July 3, 2000, Meikikou employees met with representatives of YMO and Ishihara Shoji in Japan to discuss, among other things, anticipated sales of the systems in the United States. Meikikou provided English warning labels for the tables, to be placed on the tables once they were installed in the YMO laser-cutting machine. Meikikou also provided an operation manual in Japanese that was to be used in preparing an English manual for the system. Meikikou was not involved in preparing the final manual that was provided with the system.

In October 2002, the court ordered Meikikou to produce for deposition Tsutomu Odaguchi. Odaguchi's testimony was the primary source of facts concerning Meikikou's manufacture of the scissor-lift table, Meikikou having previously provided only Odaguchi's unauthenticated affidavit and interrogatory answers. He stated that Meikikou has no involvement with the scissor-lift tables once they are delivered to Seiko in Japan. Meikikou does not sell scissor-lifts to United States customers directly; YMO is its customer. Meikikou would sell its products to Japanese companies, some of which would put the products in their overseas production.

Odaguchi also clarified that Meikikou produced English-language manuals for Japanese customers and English warning signs. If YMO alerted Meikikou that they would sell the product in another country, Meikikou would follow YMO's instructions to install safety valves or comply with other specifications particular to the product's destination.

MANI explained that it obtained the system used by Juelich about May 1999. MANI did not sell the scissor-lift table separately from the laser-cutting machine and considered it a part of the system. A MANI representative, in fact, was unaware that Meikikou was the manufacturer of the scissor-lift table. MANI sold the system to Gladwin in December 1999, and, on Gladwin's behalf, MANI shipped the items to Aries on March 27, 2000. MANI received the table as a completed unit from YMO. MANI did not assemble the table but positioned it and connected it to the system. MANI's service technician installed the equipment at Aries and trained Juelich and another employee.

MANI, as distributor of the system, has sent out safety notices relevant to the table. Its vice-president compiled a list of 122 locations, including 17 Minnesota locations, of the systems. On the request of YMO and Meikikou, MANI provided stoppers to Aries on about June 18, 2001. Stoppers were manufactured by Meikikou and used to hold the table during mainte-

nance. No stoppers were provided with the table at the time it was purchased by MANI and resold to Gladwin.

Meikikou maintains a website that emphasizes Meikikou as a world player in the scissor-lift table field. Meikikou holds itself out as keeping the "richest assortment of world-specification-standardized hardware." The English language website sets out Meikikou's domestic and international associated companies, including four in the United States. It targets "you who use our product" and states that its scissor-lifts "are one of the best industrial devices used to carry load works vertically in the world."

## ISSUE

1. Did the district court err in concluding that Meikikou had not waived its jurisdictional defense?
2. Did the district court err in granting respondent Meikikou's motion to dismiss for lack of personal jurisdiction?

## ANALYSIS

### I.

Juelich contends that Meikikou consented to the district court's jurisdiction by filing a cross-claim against Gladwin and a third-party claim against Aries, stipulating to allowing cross-claims among YMO, MANI, and itself, and delaying its motion for dismissal until over one year after the action was commenced.

Generally, a defendant submits to the court's jurisdiction only by taking some affirmative step invoking the power of the court or implicitly recognizing its jurisdiction. 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 12.17, at 346 (2002) (citing *Peterson v. Eishen*, 512 N.W.2d 338 (Minn.1994)). A defendant's

actions can waive a jurisdictional defense even though it has properly raised the defense in its answer. *Patterson v. Wu Family Corp.*, 608 N.W.2d 863, 868 (Minn. 2000). Defendants must not only comply with the letter of the rules regarding preservation of defenses and waiver, but also with the spirit of the rules. *Id.*

Participation in the litigation standing alone does not constitute a waiver. *Id.* Conducting discovery does not effect a waiver, *Johnson Bros. Corp. v. Arrowhead Co.*, 459 N.W.2d 160, 162 (Minn. App.1990); neither does asserting cross-claims or counterclaims, *Federal–Hoffman, Inc. v. Fackler*, 549 N.W.2d 93, 95 (Minn. App.1996). There is no Minnesota case law specifically addressing the effect of filing a third-party complaint on jurisdiction. Because Meikikou's third-party complaint was contingent on the original action, seeking relief "in the event it is found liable" in the original action, however, there is no basis for treating it differently from cross-claims or counterclaims.

A defendant must act promptly to give the court an opportunity to rule on the merits of the defense. *See Patterson*, 608 N.W.2d at 868; *see also Fackler*, 549 N.W.2d at 95. Inaction coupled with discovery expenses could constitute waiver of the jurisdictional defense. *Fackler*, 549 N.W.2d at 96.

Meikikou did not appear as a named defendant until the second amended summons, which was served on Meikikou on June 18, 2001 in Japan. It then served its answer, including its affirmative defense of lack of personal jurisdiction, on July 6, 2001. Substantial discovery by all parties commenced in October 2001 and in November, Meikikou had filed a third-party complaint against Aries. Meikikou's motion to dismiss for lack of personal jurisdiction was filed on June 24, 2002.

It appears that the only basis for waiver is the delay in Meikikou's motion for dismissal. While the motion to dismiss was brought about one year after Meikikou raised the defense in its answer, the record reveals that discovery of jurisdictional facts was required before such a motion could be heard. Discovery did not begin until October 2001 and was complicated by numerous parties, claims, and actions. Although the delay in making the motion was due, in part, to Meikikou's failure to produce discovery, Juelich did not file a motion to compel discovery until July 2002. In light of these facts, the district court did not err in rejecting the argument that Meikikou waived its defense of lack of personal jurisdiction.

## II.

■ Juelich, YMO, and MANI contend that the facts show sufficient minimum contacts for the Minnesota district court to exercise personal jurisdiction over Meikikou. They argue that the district court ignored evidence of such contacts.

■ Determining whether personal jurisdiction exists is a question of law and this court need not defer to the trial court's decision. *Stanek v. A.P.I., Inc.* 474 N.W.2d 829, 832 (Minn.App.1991), *review denied* (Minn. Oct. 31, 1991), *cert. denied,* 503 U.S. 977, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992). "When jurisdiction is challenged, the plaintiff bears the burden of proving that sufficient contacts exist with the forum state to support personal jurisdiction." *V.H. v. Estate of Birnbaum,* 543 N.W.2d 649, 653 (Minn.1996).

■ A Minnesota court may exercise jurisdiction over a foreign corporation under the state's long-arm statute. Minn. Stat. § 543.19, subd. 1 (2002). Here, as in many cases, there is no dispute that the long-arm statute is satisfied. The "real inquiry" is whether exercising personal jurisdiction meets constitutional muster. *Bergherr v. Sommer,* 523 N.W.2d 17, 20 (Minn.App.1994), *review granted* (Minn. Dec. 20, 1994) *and appeal dismissed* (Minn. Jan. 25, 1995). Five factors are applied to determine if a nonresident defendant has the minimum contacts necessary to require it to defend a lawsuit here. *Nat'l City Bank v. Ceresota Mill Ltd. P'ship,* 488 N.W.2d 248, 252–53 (Minn. 1992). The first three factors are the most important: (1) quantity of contacts with the forum state; (2) nature and quality of the contacts; and (3) source and connection of the cause of action with these contacts. *Id.* at 253.

■ Even if a foreign corporation has no direct contacts with Minnesota, it may still be subject to the court's personal jurisdiction under the stream-of-commerce theory. *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717, 720 (Minn.1985), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), first articulated the theory allowing a state to exercise personal jurisdiction over a defendant with no direct contacts if that defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* The *Rostad* court applied the theory to allow jurisdiction where only indirect contacts existed. 372 N.W.2d at 721.

Here, the district court noted that Meikikou had knowledge that the scissor-lift table would be integrated by YMO in the laser-cutting machine and sold overseas in the United States. The district court concluded that "the facts are unclear as to whether Meikikou had knowledge the scissor lift would be sold specifically in Minnesota. The facts also do not support any

conduct on Meikikou's part to target Minnesota with their product."

The district court concluded that *Asahi Metal Industry Co. v. Superior Ct. of Cal.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), compelled granting Meikikou's motion to dismiss. Asahi, a Japanese corporation, manufactured tire-valve assemblies in Japan and sold them to a Taiwanese company for use as components in finished tire tubes. The Taiwanese company then sold the finished tubes throughout the world and 20% of its sales were in California. Asahi was sued by an injured California motorcyclist claiming Asahi's tire-valve assembly was faulty and caused his accident. *Id.* at 105–06, 107 S.Ct. at 1029.

In *Asahi,* the United States Supreme Court clarified the stream-of-commerce theory. It stated that "placement of a product into the stream of commerce, without more, is not an act of the defendant *purposefully directed toward the forum State.*" *Id.* at 112, 107 S.Ct. at 1032 (emphasis added). There must also be a showing of "additional conduct" of a defendant indicating an intent or purpose to serve the market in the forum state. It cited examples:

> designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

*Id.*

As the district court concluded, the facts show that Meikikou placed its product into the stream-of-commerce but do not show conduct "directed toward" or "in the forum state." While Meikikou was aware that its table would eventually be part of a system destined for the United States, it took no part in the marketing or distribution of the product. Its business practice was to manufacture its product and place it in the stream-of-commerce in Japan. Upon instruction from its Japanese customer, YMO, Meikikou would comply with specifications required of different end-destinations, but Meikikou did not have "customers" in the United States. After Meikikou delivered its product to its Japanese distributor, it effectively disassociated itself from the product's marketing and distribution. In fact, a MANI representative who had sold many systems over the years was unaware that Meikikou was the manufacturer of the table.

 Only Meikikou's English-language Internet site provides a contact that could be interpreted as an advertisement accessible to Minnesotans in Minnesota. The Internet site, however, was primarily a broad promotion of the company and general advertisement of its products. It did not provide an avenue for communicating with customers and did not target Minnesota. There also was no evidence of "hits" on the Internet site or successful Internet solicitations of Minnesota residents. In any event, jurisdiction cannot be based solely on the ability to access an Internet site, *see GTE New Media Servs., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1349–50 (D.C.Cir.2000), particularly when the cause of action is unrelated to the Internet site. *Cf. State v. Granite Gate Resorts,* 568 N.W.2d 715 (Minn.App.1997) (concluding that minimum contacts existed where Internet advertising involved multiple contacts with Minnesota residents on the Internet, including one successful solicitation, and cause of action arose from Internet connection), *aff'd mem.,* 576 N.W.2d 747 (Minn.1998). While indirect contacts are sufficient for personal jurisdiction, *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717, 721 (Minn.1985) (noting distribution contracts and marketing efforts cal-

culated to create a national market for the product), the nonresident defendant must have those contacts, not just the distributor. *In re Minn. Asbestos Litig.*, 552 N.W.2d 242, 247 (Minn.1996); *see also Welsh v. Takekawa Iron Works, Co.*, 529 N.W.2d 471, 474 (Minn.App.1995) (noting that jurisdiction may be proper where wide-scale marketing efforts or nationwide sales of commonly used products existed).

The absence of any contacts with Minnesota resolves the issue of personal jurisdiction under the due-process clause. Absent any contacts, none of the "most important" factors supports personal jurisdiction over Meikikou. While the number of scissor-lift tables in Minnesota is not insignificant, there is no evidence linking Meikikou to the Minnesota distributor, the Minnesota customers, or the product in Minnesota. *See, e.g., Johnson Bros.*, 459 N.W.2d at 163 (concluding single phone call from Kansas supplier to Denver supplier did not constitute minimum contacts for personal jurisdiction over Denver company). Therefore, the district court properly dismissed Meikikou from the action.

### III.

Appellants YMO and MANI also seek reversal due to the district court's reliance on an unauthenticated affidavit. It is not clear from the record or the court's decision that the court relied on the affidavit. The court decided the motion after the Odaguchi deposition excerpts were submitted to it, and the court's findings supporting dismissal were based on the record.

### DECISION

Because appellants have not shown that respondent Meikikou waived its jurisdictional defense or had sufficient minimum contacts with Minnesota to support the exercise of personal jurisdiction, the district court correctly dismissed Meikikou for lack of personal jurisdiction.

**Affirmed.**